In the Matter of the Transfer Tax upon the Estate of Daniel B. Fearing, Deceased.

The Comptroller of the State of New York, Appellant; George R. Fearing, Individually and as Trustee, Respondent.

Tax — tax upon property transferred under testamentary power of appointment — mortgages, held outside state by non-resident and transferred under power of appointment by will of deceased resident of this state, not subject to transfer tax.

When property is transferred under a power of appointment it is to be taxed upon the exercise of such power or upon failure to exercise the same within the time provided therefor, irrespective of the time when the instrument creating the power was executed.

When the appointee of a power under a will executed in this state who is a resident of another state exercises such power, it is a privilege granted by the laws of that state and transfers of property effected thereby are beyond the reach of our tax laws.

Bonds secured by mortgages on real estate in this state, which are actually held outside the state by a foreign resident, are not taxable under the Transfer Tax Law when disposed of by the will of such non-resident.

*Matter of Fearing*, 138 App. Div. 881, affirmed.

(Argued November 17, 1910; decided January 10, 1911.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 3, 1910, which affirmed an order of the New York Surrogate's Court exempting from transfer tax certain property without the state transferred by the exercise of a power of appointment conferred by the will of Daniel B. Fearing, deceased, upon Amey R. Sheldon, deceased.

The facts, so far as material, are stated in the opinion.

*Thomas B. Casey* and *John S. Jenkins* for appellant. The trust property, over which Amey R. Sheldon exercised the power of appointment, belonged to the estate of Daniel B. Fearing, a resident decedent. (*Hull Case*, 111 App. Div.

322; 186 N. Y. 586; *Matter of Kissel*, 65 Misc. Rep. 443; *Matter of Pell*, 171 N. Y. 48; *Matter of Delano*, 176 N. Y. 486; *Matter of Haggerty*, 128 App. Div. 479; *Matter of Harbeck*, 161 N. Y. 211.) The investments represented by bonds secured by mortgages on real estate located in this state are taxable, notwithstanding the instruments evidencing the investments were not within the state. (*Matter of Merriam*, 147 Mich. 630; *Matter of Rogers*, 149 Mich. 305; *Matter of Preston*, 75 App. Div. 250; *Matter of Bronson*, 150 N. Y. 1; *Matter of Houdayer*, 150 N. Y. 40, 41; *Matter of Lord*, 111 App. Div. 152; 186 N. Y. 549; *Beers* v. *Glynn*, 211 U. S. 477; *People ex rel. Cassavoy* v. *Diamond*, 121 App. Div. 559; *Brainard* v. *N. Y. & H. R. Co.*, 25 N. Y. 496; *Miller* v. *Race*, 1 Burr. 452.)

*John L. Cadwalader* for respondent. Property appointed by the will of a non-resident under a power of appointment is taxable only if the property is within the state. (*Matter of Harbeck*, 161 N. Y. 211; *Chanler* v. *Kelsey*, 205 U. S. 466; *Matter of Delano*, 176 N. Y. 486; *Matter of Dows*, 167 N. Y. 227; *Orr* v. *Gilman*, 183 U. S. 278; *Matter of Bronson*, 150 N. Y. 1; *Matter of Walworth*, 66 App. Div. 171; *Matter of Rogers*, 71 App. Div. 461; 172 N. Y. 617; *Matter of Howe*, 86 App. Div. 286; 176 N. Y. 570; *Matter of Buckingham*, 106 App. Div. 13; *Matter of Chapman*, 133 App. Div. 337.) Bonds belonging to a non-resident decedent, whether secured by mortgages on specific parcels of real property in New York, or by mortgages given to trustees, are not taxable if the bonds are located outside the state. (*Matter of Preston*, 75 App. Div. 250; *Blackstone* v. *Miller*, 188 U. S. 189; *Matter of Leopold*, 35 Misc. Rep. 369; *Matter of Romaine*, 127 N. Y. 80; *Matter of Enston*, 113 N. Y. 174; Gerard on Titles [5th ed.], 624.)

GRAY, J. The Appellate Division has affirmed a determination of the surrogate of New York county that " bonds and other property, located outside of this state " at the date

of the death of Mrs. Sheldon, a non-resident of this state, and transferred by her will, in the exercise of a power of appointment contained in the will of Daniel B. Fearing, were not subject to a transfer tax. Upon this appeal by the comptroller of the state, it is argued, in the first place, that the trust property, which was appointed by Mrs. Sheldon's will, " was property of a resident decedent, * * * and, consequently, taxable here, wheresoever situated." In the second place, it is argued that bonds, secured by mortgages of real estate situated in this state, of which the trust estate was principally composed, " although the instruments evidencing them are outside of the state, constitute taxable property."

Daniel B. Fearing died in 1870, a resident of this state, leaving a will; by which a trust was created for the life of his daughter, Amey R. Sheldon, for her benefit. She was given the power to appoint by will the persons, to whom the trustees were to set over the remainder of the trust estate upon her death, in the event of her dying without issue. At the time of her death Mrs. Sheldon was, and had been for many years, a resident of the State of Rhode Island, and her will was there admitted to probate. She left no issue and her exercise of the power of appointment conferred by her father's will was in accord with its provisions. The surviving trustee of Fearing's will was, also, a resident of the same state. The trust estate, which was disposed of by the provisions of Mrs. Sheldon's will, wholly, consisted of bonds, secured by mortgages of real estate. The mortgages were, mainly, of real estate within this state, but none of them, or of the bonds, was, or had been, kept here.

Mr. Fearing died many years before the enactment of any statute charging the succession to estates of deceased persons with a tax. After such an enactment was placed upon the statute books, it was not until 1897 that property, passing through the execution of a power of appointment created by will, was subjected to taxation when the will had become operative before the passage of the Tax Law. Chapter 284 of the Laws of 1897 added to the Transfer Tax Law the fol-

lowing provision : " Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will ; and whenever any person or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor in whole or in part a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omissions or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure." (Section 220, subd. 5.) No language could more clearly disclose the legislative intent that property thereafter to pass by the exercise of a power of appointment should be taxed, irrespective of the time when the instrument creating the power was executed. Such an appointment to others was, for the purposes of taxation, to be deemed the equivalent of a bequest, or devise, by the donee of the power of property belonging to the donee. Prior to this amendment of the Transfer Tax Law, there was no provision for the taxation of transfers under powers of appointment ; but, with the passage of the amendment, the privilege of exercising the power by will was subjected to the charge of a tax upon the right of the appointees to take. Whereas, previously, the source of the appointee's right of succession was deemed to be in the will creating the power of appointment ; thereafter, it was to be deemed to be in the execution of the power itself. The actual transfer effected by the exercise of the power was to be taxed. The legislature, in the exercise of its control over testamentary dispositions of property, could validly burden such transfers with a tax,

regardless of the technical source of the title of the appointee under the rules of the common law. (See *Matter of Dows*, 167 N. Y. 227; *Matter of Delano*, 176 ib. 486.) As Mrs. Sheldon, in making a will, exercised a privilege granted by the laws of her own state, and not by those of this state, the transfers of property effected thereby were beyond the reach of our tax laws. The state had no dominion over the property transferred.

The second proposition urged by the comptroller presents no new question. It is covered by our decision in *Matter of Bronson*, (150 N. Y. 1). The contention that, as the mortgages, which were given to secure the payment of the bonds transferred by Mrs. Sheldon's will, were of real estate in this state, the bonds represented investments taxable here, was disposed of by that case. The provision of the Transfer Tax Law, which was then under consideration, was that " a tax shall be and is hereby imposed upon the transfer of any property * * * when the transfer is by will, or intestate law, of *property within the state*, and the decedent was a non-resident of the state at the time of his death." (L. 1892, ch. 399, sec. 1.) This provision of the law has not been changed since its enactment in 1892. · In the *Bronson* case, the testator was a resident of the state of Connecticut and a part of the residuary estate disposed of by his will consisted in shares of the capital stock, and in the bonds, of corporations incorporated under the laws of this state ; all of which were in the testator's possession at his domicile. We held the shares of stock to be taxable, as representing distinct interests of the holder in the corporate property ; but the bonds were held not to be subject to any tax. It was considered that they did not represent " property within the state " and, therefore, were not property over which this state had any jurisdiction for the purposes of taxation. The reasoning, upon which this conclusion was reached, is as effective in the present case. Whether the bonds are secured, as in the *Bronson* case, by mortgages of corporate property, or, as in the present case, by mortgages of the property of

individuals, they represent, equally, debts of their makers, which, as choses in action, under the general rule of law, are inseparable from the personality of the owner.   Under that rule, as it was said in the *Foreign Held Bonds Case*, (15 Wall. 300, 320), of the bonds there, they " can have no locality separate from the parties to whom they are due," and the legal situs of the indebtedness, which they represent, is fixed by the domicile of the creditor.   The legal title to these bonds in question was transferred by force of the laws of Rhode Island. As their legal and actual situs was in a foreign state, upon no theory were they within the operation of our Transfer Tax Law.   I am unable to perceive the force of any argument, which seeks to find in the feature of the mortgage a reason for limiting the rule of law applied by us in the *Bronson* case. If bonds issued by domestic corporations upon the security of mortgages of the corporate property are not subject to taxation, when in the hands and physical possession of a non-resident decedent, as we have decided in that case, then the bonds passing under Mrs. Sheldon's will cannot be reached for taxation.   In the *Whiting* case (150 N. Y. 27) decided at the same time as was the *Bronson Case*, it was expressly stated that the bonds there in question were subject to taxation " on account of their physical presence in this state."   There is no sound distinction between this case and the *Bronson* case, which, as I view them, commends itself to the judgment.

I, therefore, advise that we should affirm the order appealed from.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT and CHASE, JJ., concur; VANN, J., dissents; HAIGHT, J., not voting.

Order affirmed, with costs.