## No. 8773.

### WALKER ET AL. v. THE PEOPLE.

1. TAXATION—*Taxable Property.*   Bonds to bearer, payable in another state, owned by a resident thereof, and in his possession there, are not subject to inheritance tax in Colorado.

2. INHERITANCE TAX—*What Taxable.*   It is the right of succession and not the property left by the decedent, which is the subject of the inheritance tax.

Bonds payable to bearer, the property of a resident of another state, and there situate, are subject upon his demise to the laws of such other state.   Neither such property, nor the right of succession thereto, have any status in this state.

The fact that bonds are secured by a mortgage of lands within this state does not affect the question.

*Error to Denver District Court, Hon. William D. Wright, Judge.*

Mr. WILLIAM N. VAILE, for plaintiffs in error.

HON. LESLIE E. HUBBARD, Attorney General and Mr. JOHN L. SCHWEIGERT, Assistant Attorney General, for the People.

Mr. Justice Bailey delivered the opinion of the Court.

THIS is a proceeding to review a judgment of the District Court affirming an order of the County Court, fixing the amount due the State as inheritance taxes in the

estate of John U. Brookman, deceased. Brookman was a resident of the State of New York. Included in his estate were certain unregistered bonds of a Colorado Corporation, the payment of which was secured by mortgage on certain real property situated in the States of Colorado, Wyoming and New Mexico. The decedent held these bonds in the state of his residence. Upon the theory that they were property within this state, because of the situs of some of the real property mortgaged to secure their payment, the Inheritance Tax Appraiser imposed a tax upon their transfer by inheritance. In substance the executors contend that the tax is not authorized by the statute, on the ground that the bonds are not property within the state within the meaning of the statute, and that to give the law a construction necessary to include and cover the bonds would be a violation of both the state and federal constitution.

The Inheritance Tax Law of 1913, Laws 1913, page 539, under which the Appraiser assessed the tax, is, so far as applicable, as follows:

"A tax shall be, and is hereby, imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom, in trust or otherwise, to any person or persons, institution or corporation, except as hereinafter exempted, in the following cases: * * * When the transfer is by will or intestate laws of property within the State, and the decedent was a nonresident of the State at the time of his death."

There is no dispute of the State's right to impose an excise on the bonds passing by inheritance, if they are to be considered as property within the State. As was stated in *Brown v. Elder*, 32 Colo. 527, at page 532, 77 Pac. 853, 855:

"First, an inheritance tax is not one on property, but one on the succession; second, the right to take property by devise or consent is a creature of the law, and not a natural right, and therefore the authority which confers it may impose conditions upon it. From these principles

it is deduced that the State may tax privileges, discriminate between relatives, and grant exemptions, and is not precluded from this power by the provisions of the respective state constitutions requiring uniformity of taxation."

Decedent was a resident and citizen of the State of New York. The bonds, drawn to bearer, were payable in New York and were kept by him at his domicile there. Prior to his death they manifestly were beyond the reach of the taxing power of this State, for any purpose. Upon his decease the right of succession was governed by, and subject to, the laws of New York, not of Colorado, and neither the bonds, as the measure of the tax, nor the right to take them by inheritance, which is the thing actually taxed, have any *situs* in this State. The rule is stated in 37 Cyc. 1562, as follows:

"Shares of stock in a domestic corporation are subject to the tax at the domicile of the corporation on their transfer by will or under the intestate laws, although the decedent was a non-resident, and this is without regard to the place where the certificates may be kept. But a different rule applies to the bonds of a corporation. The bonds of a domestic corporation are not taxable at the domicile of the corporation if kept at the domicile of a non-resident owner, but are subject to the tax if physically present in the State, although belonging to a non-resident decedent."

It is contended by the State that the fact that the payment of the bonds is secured upon property within this State brings them, as evidence of this debt, within its power for the purpose of taxation, on the ground, among others, that creditors are compelled to invoke local laws to enforce the obligation. *Blackstone v. Miller*, 188 U. S. 439, 47 L. Ed. 439, 23 Sup. Ct. 277, is cited and relied upon in support of this contention. The question in that case was whether a debt due an Illinois decedent by a co-partnership in New York, and money deposited by him in a

New York trust company, were taxable under a clause in the New York Inheritance Tax statute, imposing a tax:

"* * * upon the transfer of any property, real or personal * * * When the transfer is by will or intestate law, of the property within the State, and the decedent was a non-resident of the State at the time of his death."

The court held in substance that this class of indebtedness was taxable in the state where the debtor resides, when the property is actually physically there. It is urged by the State that this case is decisive of the one at bar, and that it in effect overrules the authority relied upon by plaintiffs in error, which is primarily State Tax on Foreign Held Bonds, *sub nom. Cleveland P. &. A. Co. v. Pennsylvania*, 82 U. S. (15 Wall) 179, 21 L. Ed. 179. In which case a tax was levied upon bonds of a corporation doing business in Pennsylvania, when the bonds were kept at the domicile of the owner in another state. At page 187 the court said:

"Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations in numerous adjudications, but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement.

"The bonds issued by the railroad company in this case are undoubtedly property, but property in the hands of the holders, not property of the obligors. So far as they

are held by non-residents of the State, they are property beyond the jurisdiction of the State."

This principle, unless overruled by *Blackstone v. Miller, supra,* clearly precludes the taxation of the Brookman bonds as property within this State. That the court, in *Blackston v. Miller, supra,* had no intention to overturn its decision in State Tax on Foreign Held Bonds, *supra,* so far as it affected bonds, is clearly evident from the opinion therein, where, at page 445, the court says:

"There is no conflict between our views and the point decided in the case reported under the name of State Tax on Foreign Held Bonds, 15 Wall. 300, *sub nom. Cleveland P. & A. Co. v. Pennsylvania,* 21 L. Ed. 279. The taxation in that case was on the interest on bonds held out of the State. Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions. *Bacon v. Hooker,* 177 Mass. 335, 337, 58 N. E. 1078, 83 Am. St. 279. Therefore, considering only the place of the property, it was held that bonds held outside of the State could not be reached. The decision has been cut down to its precise points by later cases. *Savings & L. Soc. v. Multomah County,* 169 U. S., 42 L. ed. 803, 805, 18 Sup. Ct. Rep. 392; *New Orleans v. Stempl,* 175 U. S. 309, 319, 320, 44 L. ed. 174, 180, 20 Sup. Ct. Rep. 110."

The cases cited by defendant in error are all distinguishable by some vital and controlling fact from the case at bar. Thus, in *Blackstone v. Miller, supra,* ancillary administration was in progress in the courts of the taxing state, 112 N. W. 131, 11 L. R. A. (N. S.) 1134, 119 Am. St. 677. This is also true in *In re Rogers Estate,* 149 Mich. 305; *Albany v Powell,* 55 N. C. 51; *State v. Dalrymple,* 70 Md. 294, 17 Atl. 82, 3 L. R. A. 372, and in the Massachusetts cases.

It is settled law that it is the succession which is the subject of the tax, and not the thing inherited. In the

case at bar here is no ancillary administration here. The decedent, the legatee, and the bonds themselves, now are, and have been at all times, beyond this jurisdiction. So far as the bonds in question be concerned, there is no property, or evidence of indebtedness belonging to the Brookman estate physically within this jurisdiction, nor is this State concerned in any manner with the process of succession. In substance it is urged by defendant in error that the State has authority under the statute to tax the right of non-resident legatees to inherit property outside of the State, under the foreign-probated will of a non-resident testator. The bonds being unregistered, pass upon delivery, just like money. They are manifestly transitory and fugitive, and this State is powerless to place its hand upon them, for the purpose of taxation, in the absence of direct, specific legislation to that effect. For taxing purposes the debt which the bonds represent is the property of the bond holder, and not of the debtor. The *situs* of the bonds is the domicile of the owner, and they are taxable there. This is the rule except when such property is not in the custody of the non-resident owner, but is physically present in the state proposing to levy the tax.

Cases in state courts denying the right to tax evidences of indebtedness secured by local real estate, but held abroad, are the following:

In re *Preston's Estate*, 78 N. Y. Sup. 91, the syllabus reads as follows:

"Bonds of a private individual secured by a mortgage on real estate in New York, both bonds and mortgage being kept in good faith outside of the State, are not subject to taxable transfer acts."

The court, citing In re *Bronson's Estate*, 150 N. Y. 1, said it was unable to distinguish this case from that "where it was held that bonds of a domestic corporation owned and held in a foreign State could not be reached by the taxable transfer acts," citing, also, State Tax on Foreign Held Bonds, *supra*.

*Gilbertson v. Olive,* 129 Iowa 568, 105 N. W. 1002, was decided under a statute providing that "all property within the jurisdiction * * * and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will, or by the statutes of inheritance, of this or any other State, or by deed, grant, sale or gift, in possession or enjoyment after the death of the grantor or donor, to any person in trust, or otherwise * * * is subject to a collateral inheritance tax. Part of the property involved was notes and mortgages, owned by residents of Iowa and secured by property situated therein. The court admitting that "there is a conflict in the adjudicated cases as to whether such evidences of indebtedness are taxable at the domicile of the owner, or whether the actual *situs* of the property determines the liability to taxation," says:

"The great weight of authority, however, supports the holding of our own cases that this species of personal property, which is in a sense intangible and incorporeal, is taxable at the domicile of the owner, and not elsewhere, unless the owner has himself given it a different *situs.*"

The court then quotes *City of Davenport v. M. & M. R. R. Co.,* 12 Iowa 539, to the following effect:

"It is true that the *situs* of the property mortgaged is within the jurisdiction of the State, but the mortgage itself, being personal property, a chose in action, attaches to the person of the owner."

The court also quotes with approval from *Hunter v. Board of Supervisors,* 33 Iowa, 376, 11 Am. Rep. 132, to the following effect:

"The debt due, of which the notes are the evidence, is property vested in the owner wherever he may reside. This property in the right—the chose in action—is as absolute a property therein, and he is as well entitled to it as he is to tangible property in possession; and this species of property, debts due, must in the nature of things, follow and be with the owner, except perhaps when he has conferred authority upon some one else as his agent to loan,

manage, receive and collect the same for him * * * The right to the 'money due' being in the appellant, the property in the right must of necessity be in the place where he resides, irrespective of the *situs* of the evidence."

In *In re Fearing's Will*, 200 N. Y. 340, 93 N. E. 956, it is stated in the syllabus:

"Transfer Tax Law (laws 1892, c. 399), Sec. 1, provides that a tax shall be imposed on the transfer by will, or intestate law, of property within the State, where the decedent was a non-resident at the time of his death. Held, that bonds passing under the will of a non-resident pursuant to a power of appointment were not property within the State within such act, and subject to taxation because the bonds were secured by mortgages on lands located in New York."

At page 958 of the opinion in 93 N. E., the court said:

"Whether the bonds were secured * * * by corporate property * * * or by mortgages of the property of individuals, they represent, equally, debts of their makers, which as choses in action, under the general rule of law, are inseparable from the personality of the owners."

The contention of defendant in error prevail only upon the theory laid down in *Blackstone v. Miller, supra,* to the effect that, for inheritance tax purposes, a debt may be taxed at the domicile of the debtor; but this was declared where the property was physically in the taxing state, and ancillary administration was in progress in its courts, and can not be considered an authority for the imposition of the tax under consideration. In any event, bonds, such as are here involved, are specifically excepted by that opinion from the operation of the special rule therein laid down.

It will be observed that in some of the cases the domicile of the owner has been held to furnish the test of jurisdiction for the purpose of taxation, while in others this test has yielded to the actual *situs* of the property within the territorial limits of the taxing authority, but in no case has the domicile of the debtor, or the location of the securities, been taken as *situs* for the purpose of taxation in the ab-

sence of some special circumstances which the court considered gave it an actual *situs*. No such circumstance exists here. Moreover, whether the test to be applied is the domicile of the owner, or the place where the securities are actually located, since both are in the State of New York, the conclusion must be that the bonds are exempt from taxation in Colorado.

The judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Decision *en banc*.

Mr. Chief Justice Hill and Mr. Justice Scott dissent.

Chief Justice Hill dissenting:

*In re Bronson, deceased*, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. 632, decided October the 6th, 1896, it was held that bonds of domestic corporations owned by, and in possession of, a non-resident decedent at his domicile at the time of his death, and which then passed to non-residents by will or the law of descent in the state where he lived, were not subject to taxation in New York under that portion of its transfer tax act which reads, "When the transfer is by will or intestate law, of property within the state, and the decedent was a non-resident at the time of his death." In construing this language, the court considered with it and gave emphasis to section 22 of the New York act which defines the word "property" as meaning all property or interest therein over which the state had jurisdiction for the purposes of taxation. A very able dissenting opinion was rendered by Justice Vann, concurred in by Justice O'Brien; the majority opinion was written by Justice Gray.

*In re Houdayer, deceased*, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. 642, the same court held that individual deposits of a non-resident decedent in a trust company in that State were subject to this tax under the same act. The opinion was by Justice Vann, and per his reasoning, it was a debt owing by the trust company to the non-resident decedent, yet regardless of this he held it was

property within the state so far as the transfer act or inheritance tax law so-called was concerned, it being agreed by all (and is conceded here) that it is not a tax upon property, but rather upon the right to receive it. Justice O'Brien concurred with Justice Vann; Chief Justice Andrews and Justices Bartlett and Martin concurred in the result, upon the theory that a deposit of money in a bank, although technically a debt, is still money for all practical purposes, and as such was taxable under the transfer act. Justice Gray filed a dissenting opinion, in which Justice Haight concurred, to the effect that the trust company was a mere creditor of the decedent, and for that reason that it did no constitute property within the state, so far as their transfer act was concerned. I am unable to harmonize the two opinions, or to gather from them sufficient upon which to hazard a guess as to what the future position of that court will be on similar questions. The former of these cases is the only case cited in Vol. 37 Cyc. 1562, to sustain its statement set forth in the opinion of the court here, to the effect that the right to inherit these bonds, when held by a non-resident in another state, is not subject to such a tax in the state where issued, and where the lands covered by the mortgage to secure them is situate.

· In *Blackstone v. Miller*, 188 U. S. 189, 47 L. ed. 439, 23 Sup. Ct. 277, it was held that a deposit by a citizen of Illinois in a trust company in New York was subject to the transfer tax in New York, notwithstanding that the whole succession had been taxed in Illinois, including this deposit. This opinion was not upon the theory of the three members concurring in the opinion in the New York case last referred to, but to the contrary takes the position of Justices Vann and Gray, that the relation was that of debtor and creditor, but disagreed with the latter as to the result which should follow. For instance, the court says, "What gives the debt validity? Nothing but the fact that the law of the place where the debtor is, mill make him pay." And again

"Power over the person of the debtor confers jurisdiction we repeat. And this being so, we perceive no better

reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death."

In commenting upon State Tax on Foreign Held Bonds, 15 Wallace 300, 21 L. ed. 179, the court distinguished it from this class of cases and, among other things, said:

"The taxation in that case was on the interest on bonds held out of the state. Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions. *Bacon v. Hooker*, 177 Mass. 335, 337, 58 N. E. 1078, 83 Am. St. 279. Therefore, considering only the place of the property, it was held that bonds held out of the State could not be reached. The decision has been cut down to its precise point by later cases."

For the reason last stated, and the fact that the case referred to was concerning a tax on property, and not a tax upon the right to inherit it, I do not think it applicable here. In *State v. Probate Court*, 128 Min. 371, 150 N. W. 1094, L. R. A. 1916 A 901, it was held that a promissory note, as well as a book account, of a Minnesota corporation held by a resident of Pennsylvania and who died with the note in his possession in the latter state, was subject to a tax upon the right to succeed to the ownership of said property in Minnesota under the language of their act, which reads:

"When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a non-resident of the state at the time of his death."

This case goes into the history of the question in detail, showing that the right to succeed to ownership is taxable by the state having jurisdiction of the debtor, for the law of that state furnishes the means to compel payment, etc. While the Minnesota act has these additional words not contained in our act, viz: "or within its jurisdiction," I can not see that they add anything to its scope. The words "within this jurisdiction" are used alternately with the words "within the State" and to my mind mean "within

the State." The reasoning of the Minnesota court gives no extra effect to them, but is just as applicable to the paragraph had they been omitted.

*In Re Rogers' Estate,* 149 Mich. 305, 112 N. W. 931, 11 L. R. A. (N. S.) 1134, 119 Am. St. 677, the court held that notes secured by mortgages on lands in Michigan given by residents of that state, owned by a non-resident and held by him at his home in New York at the time of his death, were subject to an inheritance tax in Michigan under the provisions of their act which reads "When the transfer is by will or intestate law of property within the state, and the decedent was a non-resident of the State at the time of his death." This is the exact language of our act. Theirs was passed in 1903, ours in 1913. Their decision placing a construction thereon was announced July 15, 1907. Hence, long before our legislature adopted the exact language of the Michigan act, it had before it the construction of the Michigan court thereon, holding that it made subject to this tax a note held by a non-resident given by a citizen of their state when secured by a mortgage upon lands within the state.

The holding in *Kinney, executor v. Treasurer,* 207 Mass. 368, 93 N. E. 586, 35 L. R. A. (N. S.) 784, Ann. Cas. 1912 A 902, is to the same effect as the Michigan court, under a somewhat similar statute. In commenting, the court said:

"The question before us is whether these securities are property within the jurisdiction of the common wealth, in reference to taxation upon the succession * * *. The debt belongs with the mortgage, and it must co-exist to give the mortgage validity. For that purpose it has a *situs* within the jurisdiction of the State where the land lies."

The only distinction between the two cases last cited and this is that the bonds under consideration are payable to bearer, but for the purposes of this tax it appeals to me that it is a distinction without a material difference. All the authorities that I have been able to find are to the effect that under similar language the right to succeed to ownership of stock of a domestic corporation held by a non-

resident is subject to this tax. The Minnesota case applies it to an unsecured note as well as a book account, the Massachusetts and Michigan cases to notes secured by mortgages, the Supreme Court of the United States case to a bank deposit, on the theory of simple debtor and creditor. The reasoning in all is to the effect that the *situs* of the property for the purpose of this tax is at the domicile of the debtor or where the property covered by the mortgage is situate. In such circumstances, when the language of our act is considered as a whole, I am of opinion, as said by Mr. Justice Holmes in *Blackstone v. Miller*, *supra*, concerning the New York act that it was intended to reach the transfer of this property if it can be reached. The opinion, as I understand it, concedes that it can be reached by appropriate legislation. I am of opinion that it has already been reached by the language used. Whether ancillary administration is in progress or not, in my opinion, makes no difference. The question to be determined is, whether our act has attempted to, or whether we can, tax the right or privilege to inherit or succeed to such property. This should be determined by conditions as they exist at the time of the death of the testator. Such being the case, I am unable to appreciate wherein the question of ancillary administration cuts any figure, pertaining to the construction which should be given to our act. It might aid the collection of this tax, but I cannot agree that there should be any difference in the rule to be applied to the same class of property simply because one estate has ancillary administration pending and the other has not. The fact that these bonds can be transferred by delivery in another state, in my opinion, makes no difference, they are not money. A note endorsed in blank can be thus transferred, and if secured by mortgage, per former ruling of this court, such a transfer carries with it the equitable right to have the mortgaged property disposed of in satisfaction of the debt. A bond of the kind under consideration is but a promise to pay and is in a sense but a promissory note. It is common knowledge that stocks in domestic corporations are quite often endorsed in blank by the

person to whom issued, and thereafter sold and transferred by delivery through the hands of numerous persons, I can think of no reason why a book account may not be thus assigned to bearer and pass title accordingly. If it is for the reason that the bonds are payable to bearer that they are exempt from this tax, then, in my opinion, it is a reason which sacrifices substance to form.

Decided January 7, A. D. 1918. Rehearing denied April 1, 1918.