## 11418

### FULLER *ET AL.* v S. C. TAX COMMISSION

### (121 S. E., 478)

1. TAXATION—BONDS OF RAILROAD OPERATING WITHIN STATE OWNED BY NONRESIDENT, HELD NOT TRANSFER OF "PROPERTY WITHIN THE STATE," SUBJECT TO INHERITANCE TAX.—Bonds of a railroad, secured by a mortgage covering all of its property in North and South Carolina, payable in New York, purchased and kept there, and owned by a person dying a resident in New York, *held* not a taxable transfer of "property within the State" under Inheritance Tax Law, § 1, authorizing an inheritance tax, on the transfer by will or intestate law of a nonresident's property within the State.

2. TAXATION—SUBJECT TO CONSTITUTIONAL LIMITATIONS, STATE'S TAXING POWER EXTENDS TO ALL PERSONS AND PROPERTY WITHIN ITS JURISDICTION.—The taxing power of a State is general and absolute, and, except as limited by State and Federal Constitutions, extends to all persons, property, and business within its jurisdiction.

3. TAXATION—JURISDICTION TO TAX DEPENDS UPON POWER TO ENFORCE MANDATE.—Jurisdiction in matters of taxation depends upon the power to enforce the mandate of the State by action taken within its borders, either *in personam* or *in rem, according* to the circumstances of the case, and the jurisdiction to act remains, though all permissible measures be not resorted to.

---

NOTE: On liability of debt due of resident to nonresident to succession tax, see note in 4 L. R. A. (N. S.), 953, and L. R. A. 1916A, 894.

On debt due to nonresident secured by mortgage upon land within State as subject of inheritance tax, see notes in 9 L. R. A. (N. S.), 1104, and 35 L. R. A. (N. S.), 784.

On situs, as between different States or countries of personal property for purpose of taxation, see notes in 16 L. R. A., 60, 729, and L. R. A. 1915C, 903.

On question of succession tax on bonds of domestic corporation owned by estate of nonresident and held at his residence, see note in 8 A. L. R., 863.

4. STATUTES—SUBSTANTIAL DOUBT RESOLVED IN TAXPAYER'S FAVOR.—
While a tax statute is to be reasonably construed as a whole, with
a view of carrying out its purpose and intent, where the language
relied upon to bring the particular person or subject within the law
is ambiguous or is reasonably susceptible of an interpretation that
would exclude the person or subject sought to be taxed, any sub-
stantial doubt should be resolved in favor of taxpayer.

5. TAXATION—CONSTRUCTION IMPOSING DOUBLE TAXATION ON SUCCES-
SION TO PROPERTY AVOIDED, UNLESS CLEARLY REQUIRED.—A con-
struction of a tax statute that imposes double or multiple taxation
upon succession to the same property will be avoided, if not clearly
required.

6. STATUTES—LANGUAGE SUBSTANTIALLY IDENTICAL TO LANGUAGE IN
PRIOR STATUTE OF OTHER STATES GIVEN SAME CONSTRUCTION.—
Where the language incorporated into a statute is substantially
identical with that appearing in similar statutes of other States,
which have received judicial construction and interpretation prior
to the adoption of the statute under consideration, in the absence
of an express intention to the contrary, it will be presumed that
the subsequently enacted statute was intended to be understood
and applied in accordance with the construction given it by the
Courts of the States which first adopted it.

7. TAXATION—GENERALLY EVIDENCE OF INDEBTEDNESS TAXABLE ONLY
AT OWNER'S DOMICILE.—As a general rule, ordinary evidences of
indebtedness, not separated from owner's personal possession and
control, have a taxable situs only at owner's domicile, but that rule
must yield where a State expressly or by clear implication asserts
an intention to make it yield by virtue of its power over debtor's
person, or over the property pledged to secure the debt, or over
the physical evidence of indebtedness, etc.

8. TAXATION—"INHERITANCE TAX" DEFINED.—"An inheritance tax" is
a tax upon the transfer of property, not upon the property itself,
imposed upon the theory that the right to transmit or take property
by devise or descent is a creature of the law and not a natural
right, hence the authority which confers the right may impose con-
ditions upon its exercise or enjoyment.

9. DESCENT AND DISTRIBUTION—SUCCESSION TO RAILROAD BONDS GOV-
ERNED BY LAWS OF PLACE OF TESTATOR'S DOMICILE.—The succession to
railroad bonds is governed by the laws of the place of testator's
domicile.

10. TAXATION—TEST AS TO WHETHER EVIDENCES OF DEBT OWNED BY
NONRESIDENT SUBJECT TO INHERITANCE TAX.—Whether debts or ev-
idences of debt owned by a nonresident decedent, the succession to
which is governed by the laws of decedent's domicile, may prop-

erly be regarded as subject to an inheritance tax, depends on the
question whether ancillary administration may be compelled, or resort
in some form to the laws of the latter State may be necessary, to
secure recognition and confirmation of the title transferred by the
intestate laws of the State of the domicile, in order to complete the
transfer and make effectual the disposition of the property author-
ized by the law of the domicile.

11. RAILROADS—COURT MAY FORECLOSE MORTGAGE ON LINE EXTENDING
BEYOND STATE.—Where the line of a mortgaged railroad is partly
in North Carolina and partly in South Carolina, resort may be had
to the Courts of North Carolina to foreclose the mortgage and sell
the railroad as a whole.

Appeal from South Carolina Tax Commission. Reversed.

Proceedings by Thomas Stapler Fuller and others as exec-
utors of the estate of Robert K. Smith, deceased, against
South Carolina Tax Commission. From the adverse de-
cision of the Tax Commission, the executors appeal.

*Messrs. Nicoll, Anable, Fuller & Sullivan* and *Benet,
Shand & McGowan,* for appellant, cite: *Rule for the taxa-
tion of intangible personal property:* 2 Speers, 719; 2 Speers,
626; 3 Strob. L., 263; 5 S. C., 293. *Reversed:* 96 U. S.,
432; 7 Wall. 139. *Inheritance Tax Act does not show clear
intention to abrogate common law rule:* Act 1922, No. 478;
68 S. C., 554; 14 S. C., 350; 25 R. C. L., 1054; Sec. 280,
282; 96 S. E., 317; Ann. Cas. 1916B, 728; 72 A. S. R., 550;
85 Am. Dec., 658; 26 L. R. A. (N. S.-, 514; 101 U. S., 557;
82 N. Y., 10; 117 Fed., 462; 2 Cranch, 358; 100 U. S., 491;
99 U. S., 194. *Where statute is susceptible of two interpreta-
tions, the one relieving it of all constitutional doubt must pre-
vail:* 84 S. C., 563; 9 S. C., 441; 251 U. S., 210; 258 U. S.,
204; 213 U. S., 366; 104 S. E., 479; 126 Va., 461; 235 U.
S., 360; 112 U. S., 261; 189 U. S., 86; 25 R. C. L., 1000–
1001. *Tax statutes are strongly construed in favor of tax-
payer:* 118 S. E., 323; 66 L. Ed., 747; 25 R. C. L., 1092; 245
U. S., 151; 141 U. S., 468; 271 Fed., 995; 192 U. S., 38; 198
N. Y., 238; 28 S. C., 526. *Contemporaneous construction
of statutes entitled to great weight:* 14 S. C., 101; 47 N. Y.,

376; 25 R. C. L., 1069, 1070, 1071; 220 U. S., 235; 167 U. S., 513; 168 U. S., 144; 110 U.S ., 621; 86 S. E., 874; 99 S. E., 650; 36 Cyc.; 1154; 101 S. E., 533. *New York and South Carolina statutes practically identical:* 34 L. R. A., 238; 82 U. S., 300. *Colorado statute identical:* 171 Pac., 747. *Minnesota identical:* 133 Minn., 117. *Power of the States to tax limited to persons, property and business within its domain:* 82 U. S., 300; 116 U. S., 517; 92 U. S., 575; 173 U. S., 193; 177 U. S., 133; 188 U. S., 385. *Bonds and negotiable instruments are capable of having a situs of their own:* 188 U. S., 189; 233 U. S., 434; 26 R. C. L., 214; 34 L. R. A., 238; 200 N. Y., 340; 213 U. S., 200; 206 U. S., 392. *Mortgage securing bonds can be foreclosed without aid of South Carolina Courts:* 94 U. S., 444; 198 U. S., 193; 102 N. Y., 729; 166 Ill., 580; 21 S. E., 701; 81 Fed., 422; 26 R. C. L., 215; 5 S. C., 393. *General doctrine of situs of intangible property for taxation purposes:* 82 U. S., 300; 175 U. S., 309; 206 U.S., 392; 213 U. S., 200; 221 U. S., 346; 177 U. S., 133; 191 U. S., 388; 205 U. S., 395. *Statute would be unconstitutional if construed to tax bonds under consideration:* 82 U. S., 300; 188 U. S., 385.

*Messrs. J. Fraser Lyon* and *George E. Turner,* for respondent, cite: *Bonds secured by mortgage covering property in this State are taxable here:* 252 U. S., 37; 35 L. R. A. (N. S.), 784; 9 L. R. A. (N. S.), 1104; Ann. Cas. 1915B, 865; 188 U. S., 189; 169 U. S., 421; Gray on Taxing Power, Secs. 94, 95; 173 S. W., 101; 8 A. L. R., 855. *Tax statutes are to receive reasonable consideration with the view of carrying out their purpose and intent:* 196 U. S., 511. *The Act as construed does not impair obligation of a contract:* 178 U. S., 139; 242 U. S., 238; 258 U. S., 384.

February 11, 1924.

The opinion of the Court was delivered by Mr. JUSTICE MARION.

Robert K. Smith, a resident of New York, died October 24, 1922, leaving of force a will of which the appellants, residents of New York, are the executors. At the time of his death he owned bonds of the Piedmont & Northern Railway Company, a South Carolina corporation, of the face value of $87,900 and scrip certificates for fractional parts of one bond of the face value of $900.00. The bonds were unregistered coupon bonds, payable to bearer, issued in New York, and payable in New York. The scrip certificates were transferable only upon the books of the company, by surrender and endorsement thereof. The bonds and scrip were purchased by the testator, Smith, in New York and were at all times thereafter kept in New York. The payment of the bonds was secured by the railway company's mortgage or deed of trust to the Farmers' Loan & Trust Company, a New York corporation, covering all of the property of the railway company, consisting of a line of railroad of 99.11 miles in South Carolina and of 30.39 miles in North Carolina, together with the property, real and personal, thereto appurtenant. The company operates the said line of railway and maintains an office in the City of New York.

The South Carolina Tax Commission ruled that a transfer of these bonds and scrip certificates was subject to an inheritance or succession tax under the laws of South Carolina, and assessed the tax accordingly. From that decision the executors appeal.

Section 1 of the Inheritance Tax Law of this State (Act approved February 23, 1922, 32 Stat., p. 800), contains the following provision:

"A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom, in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, for the support of the State government in the following cases:   *   *   *   (b) When the transfer is by will or intes-

tate laws of property within the State, and the decedent was a nonresident of the State at the time of his death."

The sole question presented is whether the transfer of these bonds and certificates is a taxable transfer of "property within the State" under the terms and within the purview of the foregoing statutory provision.

The tax was imposed by the State upon the theory that the bonds and certificate were evidences of indebtedness; that the debt represented by the securities was owed by a South Carolina corporation; that the payment of the bonds was secured in large part by a mortgage of real estate and tangible personal property situated within the State; that the testator, Smith, had an equitable interest in the physical property within this State, under the mortgage which secured his debt, to the amount of the bonds owned by him; that at his death that interest in property in this State passed to the legatees under his will; that that property interest is secured and protected by the laws of South Carolina, which give legal existence to and confer corporate powers upon the debtor, which give validity to the mortgage lien on the physical property within the State, which preserve the social and economic conditions upon which the value of the mortgaged property depends, and which must be invoked as a last resort to enforce the rights of any owner of the bonds; and that the State can enforce the collection of the tax by appropriate process within its jurisdiction.

The fundamental principle that the taxing power of a State is general and absolute, and, except as limited by particular provisions of the State and Federal Constitutions, extends to all persons, property, and business within its jurisdiction, is well settled. *Santee Mills v. Query,* 122 S. C., 158; 115 S. E., 202. *Shaffer v. Carter,* 252 U. S., 37; 40 Sup. Ct., 221; 64 L. Ed., 445. As pointed out by Mr. Justice Pitney in the case last cited:

"Governmental jurisdiction in matters of taxation, as in the exercise of the judicial function, depends upon the power

to enforce the mandate of the State by action taken within its borders, either *in personam* or *in rem* according to the circumstances of the case, as by arrest of the person, seizure of goods or lands, garnishment of credits, sequestration of rents and profits, forfeiture of franchise, or the like; and the jurisdiction to act remains, even though all permissible measures be not resorted to."

Hence, it is contended by respondent that the jurisdiction of the State to impose and enforce the tax assessed in the case at bar may be sustained upon either or both of two theories: (1) That a transfer of evidence of indebtedness may be taxed at the domicile of the debtor; and (2) th'at such evidence of indebtedness, secured by real estate within the State, may be taxed at the situs of the land mortgaged to secure the debt.

The first theory is broadly enunciated and applied by the Supreme Court of the United States in the case of *Blackstone v. Miller,* 188 U. S., 189; 23 Sup. Ct., 277; 47 L. Ed., 439. In that case Blackstone, the testator, died domiciled in Illinois. Under a statutory provision practically identical with ours, the State of New York levied a succession tax on a debt due the deceased by a New York firm, and on a sum of money held on a deposit account for the deceased by a New York Trust Company. The Court sustained the tax imposed by the State authorities, taking the broad view that the State had jurisdiction to levy the tax "because of the practical fact of its power over the person of the debtor," and holding that "power over the person of the debtor confers jurisdiction." See, also, *State Ex Rel. Graff v. Probate Court,* 128 Minn., 371; 150 N. W., 1094; L. R. A. 1916A, 901. The second theory, that for the purpose of a succession tax a debt due a nonresident secured by mortgage of real estate may be given a situs in the State where the real estate is situate, likewise has the approval of respectable judicial authority. Thus, in *Re Merriam,* 147 Mich., 630; 111 N. W., 196; 9 L. R. A. (N. S.), 1104; 118 Am. St. Rep.,

561; .11 Ann. Cas., 119, it was held that a debt secured by a mortgage on Michigan real estate·was subject, on the death of the owner of the note secured by the mortgage, to the inheritance tax imposed by that State, although the owner was a resident of another State, and had the note and mortgage in his possession outside of the State at the time of his death. To the same effect is *In re Rogers,* 149 Mich., 305; 112 N. W., 931; 11 L. R. A. (N. S.), 1134; 119 Am. St. Rep., 677. And see *Kinney v. Stevens,* 207 Mass., 368; 93 N. E., 586; 35 L. R. A. (N. S.), 784; Ann. Cas. 1912A, 902. *Savings, etc., Society v. Multnomah County,* 169 U. S., 421; 18 Sup. Ct., 392; 42 L. Ed., 803. *Bristol v. Washington County,* 177 U. S., 133; 20 Sup. Ct., 585; 44 L. Ed., 701. *Allen v. National State Bank,* 92 Md., 509; 48 Atl., 78; 52 L. R. A., 760; 84 Am. St. Rep., 517. *Mumford v. Sewall,* 11 Or. 67; 4 Pac., 585; 50 Am. Rep., 462.

But, even if it be conceded that the State has power to exact a tax of the character here imposed, that consideration is not decisive of the question presented. In *Blackstone v. Miller, supra,* and in similar cases decided by the Supreme Court of the United States, where the only question involved was the power of a State under the Federal Constitution to levy the tax, it ·was properly assumed that it was the intention of the State Legislature to impose a tax upheld by the State Courts. But in the interpretation of a tax statute a State Court, consistently with established canons of construction, may not soundly assume that, as to the makers of such a law—

> "The good old rule
> Sufficeth them, the simple plan,
> That they should take who have the power,
> And they should keep who can."

While a tax statute is to be reasonably construed as a whole with the view .of carrying out its purpose and intent (*Scottish U. & N. Insurance Co. v. Bowland,*

196 U. S., 611; 25 Sup. Ct., 345; 49 L. Ed., 619. *Santee Mills v. Query,* 122 S. C., 158; 115 S. E., 202), where the language relied upon to bring the particular person or subject within the law is ambiguous or is reasonably susceptible of an interpretation that would exclude the person or subject sought to be taxed, the well established general rule requires that any substantial doubt should be resolved against the government and in favor of the taxpayer (*United States v. Merriam,* 44 Sup. Ct., 69; 68 L. Ed., 48). In the application of that general rule there are other recognized principles of construction which are pertinent and may lend controlling weight. Double or multiple taxation upon succession to the same property is not favored in the law, and a construction of a tax statute that imposes such double taxation will be avoided if not clearly required. 26 R. C. L., p. 217, Par. 186. And where the language incorporated into a statute is identical or substantially identical with that appearing in similar statutes of other States which have received judicial construction and interpretation prior to the adoption of the statute under consideration, in the absence of an expressed intention to the contrary it will be presumed that the subsequently enacted statute was intended to be understood and applied in accordance with the construction given it by the Courts of the states which had first adopted it. 25 R. C. L., 1069–1071; *Simpson v. Willard,* 14 S. C., 191. The question here, as we apprehend, is not one of legislative power, but of intention. In the light of the foregoing canons of construction, may it soundly be held that the transfer taxed in the case at bar is such a transfer of a nonresident decedent's "property within the state" as is fairly embraced within the intendment of the statute?

There can be no doubt that evidences of indebtedness, intangibles of the character here involved, are property, in the sense generally understood and accepted for purposes of taxation, only in the hands of the legal owner or possessor. With respect to this species of property there would seem to be

little, if any, warrant for characterizing the maxim, *mobilia sequentur personam,* as a fiction of the law.  In the case of *State Tax on Foreign-Held Bonds,* 15 Wall., 300; 21 L. Ed., 179, where the State of Pennsylvania undertook to tax the interest payable upon bonds of a Pennsylvania corporation, secured by a mortgage of its property in that State, and held by a nonresident, the Supreme Court of the United States, in declaring the tax invalid, said:

"But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors.  With them they are property, and in their hands they may be taxed.  To call debts property of the debtors is simply to misuse terms.  All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be.  Their debts can have no locality separate from the parties to whom they are due.  * * *  The bonds issued by the railroad company in this case are undoubtedly property, but property in the hands of the holders, not property of the obligors.  So far as they are held by nonresidents of the State, they are property beyond the jurisdiction of the State."

While that doctrine, as thus broadly laid down, has been qualified by later decisions of that Court in sustaining the power of State governments to give debts and the evidences of debt a taxable situs, in various special circumstances, elsewhere than at the domicile of the owner or creditor (*Wheeler v. Sohmer,* 233 U. S., 434; 34 Sup. Ct., 607; 58 L. Ed., 1030.  *Liverpool Insurance Co. v. Orleans Assessors,* 221 U. S., 346; 31 Sup. Ct., 550; 55 L. Ed., 762; L. R. A. 1915C, 903.  *Savings & Loan Society v. Multnomah County,* 169 U. S., 421; 18 Sup. Ct., 392; 42 L. Ed., 803, and other cases), the proposition that as a general rule ordinary evidences of indebtedness, not separated from the personal possession and control of the owner or creditor,

3—S. C. R., 128.

are property, and have a taxable situs only at the domicile of the owner, has never been called in question. That rule, it is true, must yield where a State expressly or by clear implication, asserts an intention to make it yield by virtue of its power over the person of the debtor, or over the property pledged to secure the debt, or over the physical evidence of indebtedness, etc. Specifically, then, our inquiry is whether there has been such an expression of legislative intent as requires that the general rule yield in this case.

It is not suggested that the securities here involved 8, 9 were "property within the State," in the sense that they were subject to the general property tax in force at or prior to the testator's death. Nor is it contended that the transfer of the securities for value by the nonresident owner during his life, in the ordinary course of business beyond the limits of the State, could have been subjected to an excise tax here. If, therefore, the transfer of this property, effected by succession laws, is taxable, some reasonable and substantial basis for imposing the tax should be found in the nature and theory of inheritance taxation. It is well settled that an inheritance tax, in the form here involved, is a tax upon the transfer of property not upon the property itself, imposed upon the theory that the right to transmit or take property by devise or descent is a creature of the law and not a natural right, and therefore, the authority which confers the right may impose conditions upon its exercise or enjoyment. *Maxwell v. Bugbee,* 250 U. S., 525; 40 Sup. Ct., 2; 63 L. Ed., 1124. Applying that theory to the case at bar, in what sense may it be said that the right to devise these securities or the right to take them by devise was conferred by or dependent upon the laws of South Carolina? The succession to the property was subject to and governed by the laws of New York, the place of the testator's domicile. *Lamar v. Scott,* 3 Strob., 563. The right to transfer the title of the property at the testator's death and the right to take that title were conferred by the law of New

York; and the transfer of the legal title was effected wholly and solely by operation of the New York laws. That such transfer was subject to inheritance taxation in New York there can be no doubt. If taxable here, and perhaps also taxable in North Carolina, the same transfer, unquestionably, would be subjected to double or multiple taxation. Nevertheless if the right to the legal title transferred by the laws of New York could not be enforced without obtaining the recognition and confirmation of that right under the succession laws of South Carolina then there would be tenable ground for the contention that the transfer is referable to and dependent upon the law of South Carolina in a sense consistent with the theory of an inheritance tax; that is, in any case where ancillary administration might be compelled in order to enable an executor or administrator to reduce to possession personal property of a decedent, kept out of the State of the decedent's domicile, or in order to enable such executor or administrator to assert title and secure for the legatees or distributees the beneficial enjoyment of the property transferred by the law of the decedent's domicile, then it is apparent that in a very real and substantial sense the property may be said to be transferred by virtue of the succession or intestate laws of the State where resort to such ancillary administration may be compelled.

If, for example, the property here involved were a certificate of deposit issued by a bank in Columbia or an account due the testator by a Columbia firm (the kind of debts or evidences of debt involved in *Blackstone v. Miller, supra,* where there was ancillary administration in New York), the executors of this will, although vested with the legal title to these assets of their testator by the law of New York, could not have asserted that title and collected the debts against the will of the local bank or firm, without first making probate of the will in the courts of South Carolina. Likewise, if the bonds and certificates here in question had been physically present in this State

at the time of the testator's death, although legal title thereto would have been transferred to the executors under and by virtue of the laws of New York, they could not have asserted that title and reduced the securities to possession against the will of the custodian of the securities in this State, without first making probate of the will and obtaining recognition and confirmation of their authority to act under the laws of this State. *Heyward v. Williams,* 57 S. C., 235, 242; 35 S. E., 503. *Dial v. Tappan,* 14 S. C., 575; 37 Am. Rep., 737. Such a case was that of *Wheeler v. Sohmer,* 233 U. S., 434; 34 Sup. Ct., 607; 58 L. Ed., 1030, where the State of New York imposed an inheritance tax on the transfer of notes owned by a resident of Connecticut, but which were kept in a safe deposit vault in New York. The notes were disposed of by a will probated in Connecticut. But, as pointed out by Mr. Justice McKenna, in his concurring opinion:

"Ancillary letters of administration were issued to plaintiffs in error by the Surrogate's Court, County of New York, State of New York, and the taxed notes were part of the property disposed of by his will. * * * In other words, the laws of New York are invoked, accomplish its transfer and subject it to the dispositions of the will and make effectual the purposes of the testator."

In that consideration we think lies the true test of whether debts or evidences of debt owned by a nonresident decedent, the succession to which is authorized and governed by the laws of the decedent's domicile, may properly be regarded as subject to an inheritance tax in another State, seeking to impose such tax. May ancillary administration be compelled in the latter State, or may resort in some form to the laws of the latter State be necessary to secure recognition and confirmation of the title transferred by the intestate or succession laws of the State of the domicile in order to complete the transfer in fact and make effectual the disposition of the property authorized by the law of the domicile? If

so, we think, there is such a transfer of a nonresident decedent's "property within the State," seeking to impose the tax as may properly be taxed consistently with the theory of inheritance taxation.

Applying that test to the transfer of the bonds, and the certificates representing fractional parts of a bond, here involved, there would seem to be no valid ground for holding that ancillary administration or resort in other form to the laws of this State to compel recognition of the transferees' title could be compelled in order to accomplish in fact the transfer authorized by the law of the testator's domicile. The securities not being physically present in this state, no ancillary administration could be compelled for the purpose of reducing them to possession. The bonds and certificates were payable in New York, and the resident debtor could not require ancillary administration in this state as a condition of payment. In the contingency that it should be necessary for the trustee to foreclose the mortgage for the benefit of the bondholders, since the line of railway mortgaged lies in two states, resort could be had to the Courts of North Carolina to foreclose the mortgage and sell the line of railway as a whole. *Muller v. Dows,* 94 U. S., 444; 24 L. Ed., 207; *Riverside Mills v. Alabama & Georgia Mfg. Co.,* 198 U. S., 197; 25 Sup. Ct., 629; 49 L. Ed., 1016. While the efficacy of such a judgment would finally depend upon the laws of this state, in that it could ultimately be enforced only through the Courts of this state, still the judgment would be entitled to enforcement under the full faith and credit clause of the federal Constitution, and it would seem clear that the executors of or legatees under the will here involved could not be deprived of their beneficial interest in such judgment, by failure to resort to ancillary administration proceedings in South Carolina to establish here the title to the securities transferred by the succession laws of New York. *State v. Chadwick (Re* Ward), 133 Minn., 117; 157 N. W., 1076; 158

N. W., 637; L. R. A. 1916E, 1288.    In any view, therefore, we can see no valid ground upon which to rest a conclusion that the effectual transfer of these particular securities in accordance with the disposition of the testator's will could be made to depend upon the law of South Carolina.    Certainly there is no such substantial or practical dependence as will warrant the view that it was the clear intendment of the statute to impose the tax as an excise upon a transfer "by will or intestate laws of property within the state."

That view is strongly reinforced by the following consideration:  The language of the South Carolina statute, adopted in 1922, here under consideration, is practically identical with that of the New York statute (1892), of the Minnesota statute (1905) and of the Colorado statute (1913). The construction accorded that language, as applied to facts substantially identical with those of this case, by the Courts of those states is, therefore, entitled to great weight.    It is noteworthy that the case of *Blackstone v. Miller, supra,* strongly relied upon to support respondent's position here, was an appeal in a New York case, and that, while the Courts of New York held the inheritance tax law of that State applicable to a transfer of the character involved in *Blackstone v. Miller,* they have held that the tax was not applicable to the transfer of bonds of a domestic corporation, held by a nonresident testator, and in his possession at the place of his domicile at his death.    In the case of *In re Estate of Bronson,* 150 N. Y., 1; 44 N. E., 707; 34 L. R. A., 238; 55 Am. St. Rep., 632, the Court said:

"The imporant words to be noticed in this section, which impose the tax, are, in the case of a nonresident decedent, 'property within the State.' * * *  Whatever may be argued in support of the right to subject the bonds of domestic corporation to appraisement for taxation purposes under this Act, when physically within the State, upon some theory that they are something more than the evidences of a debt, and constitute a peculiar and appreciable species of property,

* * * such argument is certainly unavailing in this case, where the bonds themselves were at their owner's foreign domicile. They did not represent 'property within the State' in any conceivable sense."

In the subsequent case of *In re Fearing,* 200 N. Y., 340; 93 N. E., 956, the Court said:

"Whether the bonds are secured, as in the *Bronson Case* [150 N. Y., 1], by mortgages of corporate property, or, as in the present case, by mortgages of the property of individuals, they represent, equally, debts of their makers, which, as choses in action, under the general rule of law, are inseparable from the personalty of the owner. Under that rule, as it was said in the *Foreign-Held Bonds Case,* 15 Wall. [U. S.] 300, 320, of the bonds there, they 'can have no locality separate from the parties to whom they are due,' and the legal situs of the indebtedness, which they represent, is fixed by the domicile of the creditor. The legal title to these bonds in question was transferred by force of the laws of Rhode Island. As their legal and actual situs was in a foreign State, upon no theory were they within the operation of our Transfer Tax Law. I am unable to perceive the force of any argument which seeks to find in the feature of the mortgage a reason for limiting the rule of law applied by us in the *Bronson Case.*"

See, also, *Re Richards,* 182 App. Div., 572; 169 N. Y., Supp., 968; Id., 225 N. Y., 671; 122 N. E., 889.

In the case of *State v. Chadwick (Re Ward),* 133 Minn., 117; 157 N. W., 1076; 158 N. W., 637; L. R. A. 1916E, 1288, the Minnesota Court held (syllabus):

"Under the Minnesota inheritance tax law (Laws 1905, c. 288, § 1, as amended by Laws 1911, c. 372, § 1; G. S. 1913, § 2271), providing for a succession tax when a transfer is by will or intestate law of property within the jurisdiction of the State and decedent is a nonresident, bonds of a railroad company incorporated under the laws of Minnesota, having its principal place of business and general

offices in the State, payable in New York, owned by a resident of Illinois and in his possession there at the time of his death, the persons succeeding thereto being residents of Illinois, the railway being subject to jurisdiction in states other than Minnesota and it not being necessary to invoke the laws of Minnesota or resort to its Courts, are not subject to a succession tax in Minnesota."

In the Colorado case of *Walker v. People,* 64 Colo., 143; 171 Pac., 747; 8 A. L. R., 855, the decedent was a resident of New York. At his death he held in his possession at his domicile certain bonds of a Colorado corporation unregistered and payable to bearer, the payment of which was secured by mortgage on real property situated in the State of Colorado, Wyoming, and New Mexico. The Colorado Court, in a well considered opinion, held (syllabus) :

"Unregistered corporate bonds held by a nonresident at his domicile are not subject to inheritance tax in the State where the corporation is located."

We are not inadvertent to the fact that prior to the adoption of our Inheritance Tax Law statutes in substantially similar form had been enacted in a number of States other than the three above referred to. But we have been cited to no decisions from other states, and have found none, which have held that a tax upon a transfer identical with, or essentially similar in character to, that here in question was upheld.

From the foregoing discussion we think it sufficiently appears (1) that substantial doubt exists as to whether the transfer of property here involved is embraced within the language of the inheritance tax statute; (2) that the imposition of the tax would involve taxation upon a transfer of the same property in at least two different jurisdictions; and (3) that a construction of the statute upholding the tax imposed would conflict with the judicial construction of the same, or a practically identical, statutory provision, adopted in other jurisdictions prior to the enactment of the statute

in this State. It follows, in the light of the established canons of statutory construction above adverted to, that the tax assessed in the case at bar cannot be sustained.

Accordingly, the order appealed from is hereby reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.