McLAUGHLIN et al. v. CLUFF, Attorney General, et al.

No. 4265.   Decided September 12, 1925.   Rehearing Denied November
14, 1925.   (240 P. 161.)

TAXATION—BONDS OF UTAH CORPORATION IN POSSESSION OF NON-
RESIDENT DYING IN FOREIGN STATE HELD NOT "PROPERTY WITHIN
JURISDICTION OF THE STATE," SO AS TO BE SUBJECT TO TAXATION.
Bonds of Utah railroad corporation in possession of nonresident
at time of his death, which occurred in a foreign state, *held*
not "property within jurisdiction of the state," within Comp.
Laws 1917, § 3185, as amended by Laws 1919, c. 64, so as to be
subject to inheritance or transfer tax.

Appeal from District Court, Third District, Salt Lake
County; *Chris Mathison*, Judge.

Action by Frederick C. McLaughlin and Rufus W.
Sprague, Jr., administrators, against Harvey H. Cluff, as At-
torney General, and another, to recover inheritance taxes
paid under Comp. Laws 1917, § 6094.   Judgment for plain-
tiffs, and defendants appeal.

AFFIRMED.

*L. A. Miner*, Asst. Atty. Gen., for appellants.

*Booth, Lee, Badger, Rich & Rich*, of Salt Lake City, for re-
spondents.

FRICK, J.

The plaintiffs, as administrators of the estate of one Albert
Prince de Monaco, deceased, late a resident of the republic
of France, brought this action in the district court of Salt
Lake county pursuant to Comp. Laws Utah 1917, § 6094,
against the defendants, as Attorney General and state treas-
urer respectively of the state of Utah, to recover certain in-
heritance taxes paid under protest, by plaintiffs, as such ad-

ministrators, to the defendants in their official capacity and in compliance with the laws of the state of Utah.

The plaintiffs, in their complaint, at great length and with much particularity, have set forth the facts, which, omitting all of the jurisdictional facts and matters of inducement, in substance, are: That deceased died testate at Paris, France, and that his last will and testament was duly admitted to probate in the city of Paris; that at the time of his death he was the owner and in possession (in the language of the complaint) of $100,000 in par value of Union Pacific Railroad Company (a corporation organized pursuant to the laws of the state of Utah) 4 per cent. first mortgage land grant bonds, maturing in 1947, and 225 Central Pacific Railroad Company (also a corporation organized pursuant to the laws of the state of Utah) 4 per cent. bonds, the par value of which is 500 francs, due in 1946; that the market value of said last bonds, at the time of the death of decedent, was $15,975, and the total market of all said bonds at said time was $110,725; that said Union Pacific Railroad Company * * * bonds, maturing July 1, 1947, were and are secured by a certain deed of trust dated the 1st day of July, 1897, covering all of the railroad property of the said Union Pacific Railroad Company * * *; and that said bonds of the Central Pacific Railroad Company are secured by a certain deed of trust dated the 1st day of July, 1896, covering all of the property of said Central Pacific Railroad Company, situate,'' etc.

It is then alleged that plaintiffs, as administrators of the estate aforesaid, on the 28th day of August, 1924, were, by the defendants in their capacity aforesaid, compelled to pay an inheritance or transfer tax on said bonds amounting to the sum of $5,964.16, all of which was paid under protest, a copy of which protest is attached to and made a part of the complaint. It is further alleged that said tax is illegal and void, stating the reasons in that regard. It is also alleged that the aforesaid Union Pacific Railroad Company bonds were issued on July 1, 1897, and were secured by a deed of trust to the Mercantile Trust Company, as trustee, a corpora-

tion organized under the laws of the state of New York with
its principal office in New York City; that said Union Pacific
bonds were issued in the state of New York by said trustee
and both principal and interest made payable at the office of
the trustee in the city of New York; that said bonds were
unregistered and that it is "expressly provided that the same
shall pass by delivery or by transfer on the books of the rail-
road company in the city of New York if at any time the
same be registered  *   *   *; that said bonds are secured by
the conveyance to said trustee of the * * * appurtenances,
estates, lands, properties, rights, privileges, and franchises of
the said Union Pacific Railroad Company situate in the states
of Iowa, Kansas, Missouri, Nebraska, Colorado, Wyoming,
and Utah, and that only a small proportion in value of said
properties are physically situate in the state of Utah, and
that all of said bonds could and would be satisfied if unpaid
by the foreclosure of said trust deed on properties of said
railroad company situate outside of the state of Utah; that
it is expressly provided that in case of default in the pay-
ment of said bonds said mortgaged railroad's premises, rates,
franchises, and interest, and all right, title, interest, claim,
and demand therein, and right of redemption thereof, may
be sold by said trustee at public auction at the city of Omaha,
Neb." It is further alleged that the trustee, if it deems it
necessary, may institute suit in any court of competent juris-
diction and that the remedies provided for in the trust deed
shall be cumulative and not exclusive.

Substantially the same allegations in respect of the security
and payment of the Central Pacific Railroad bonds are con-
tained in the complaint. By what we have just stated we do
not mean that the allegations are the same in language but
what we do mean is that the legal effect of the allegations, so
far as they are material to this decision, relating to the Cen-
tral Pacific Railroad Company bonds, is the same as is the
legal effect of the allegations relating to the Union Pacific
Railroad Company bonds.

It is also alleged in the complaint that the deceased during
his lifetime was not a resident or citizen of the state of Utah

nor of the United States; that he purchased all of said bonds in the state of New York; and that the same "were never within the state of Utah at any time after their purchase by said deceased," but were at once by him taken to his place of residence in the principality of Monaco in the republic of France as before stated "and never were and are not property within the state of Utah."

The allegation that the said bonds were not and are not property within the state of Utah, the defendants insist, is an averment of a legal conclusion rather than an allegation of fact and hence they do not admit the same as a fact. There are many other allegations contained in the complaint which we do not deem it necessary to state or to more specifically refer to herein.

The defendants, hereinafter called appellants, interposed a general demurrer to the complaint, which was overruled by the district court, and appellants electing not to plead further, but to stand upon their demurrer, the court entered judgment in favor of the plaintiffs, hereinafter called respondents, for the full sum claimed and interest and costs. Appellants have appealed from the judgment and insist that the court erred in overruling their demurrer and in entering judgment in favor of respondents.

The tax in question was collected pursuant to the provisions of our statute (Comp Laws Utah 1917, § 3185, as amended by chapter 64, Laws Utah 1919, which, so far as material to the question involved on this appeal, reads as follows:

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritance of this or any other state, or by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after the death of the grantor, vendor, or donor, to any person in trust or otherwise * * * shall be subject to the following tax, after the payment of all debts, for the use of the state. * * *"

The statute then provides the amount of property that shall be exempt from the tax and the amount that shall be paid, which is upon a graduated scale.

The controlling question is whether the bonds in question, at the time of the death of the decedent, was "property within the jurisdiction of this state" so as to make it subject to the inheritance or transfer tax imposed by our statute. The two appellants, in their brief and oral argument, insist that the bonds in question, at the time aforesaid, were within the jurisdiction of the state and subject to the tax, while respondents very urgently contend to the contrary. While many cases are cited by each side, yet we shall herein refer to such only as have passed upon the question under statutes which in effect are like ours.

The cases in which statutes like ours are passed on are the following: *Matter of Blackstone*, 69 App. Div. 127, 74 N. Y. S. 508, affirmed in a memorandum opinion in 171 N. Y. 682, 64 N. E. 1118, also affirmed on writ of error to the Supreme Court of the United States under the title of *Blackstone* v. *Miller*, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439; *Matter of Houdayer*, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. Rep. 642; *Matter of Bronson*, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632; *Matter of Whiting*, 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. Rep. 640; *In re Joyslin's Estate*, 76 Vt. 88, 56 A. 281; *Kinney* v. *Treasurer and Receiver General*, 207 Mass. 368, 93 N. E. 586, 35 L. R. A. (N. S.) 784, Ann. Cas. 1912A, 902; *Bliss* v. *Bliss*, 221 Mass. 201, 109 N. E. 148, L. R. A. 1916A, 889; *Gilbertson* v. *Oliver*, 129 Iowa, 568, 105 N. W. 1002, 4 L. R. A. (N. S.) 953; *Walker* v. *People*, 64 Colo. 143, 171 P. 747, 8 A. L. R. 855; *Fuller* v. *South Carolina Tax Comm.*, 128 S. C. 14, 121 S. E. 478; *State* v. *Chadwick*, 133 Minn. 117, 157 N. W. 1077, 158 N. W. 637, L. R. A. 1916E, 1288. Appellants also cite and especially rely on the cases of *In re Merriam's Estate*, 147 Mich. 630, 111 N. W. 196, 9 L. R. A. N. S.) 1104, 118 Am. St. Rep. 561, 11 Ann. Cas. 119, and *In re Stanton's Estate*, 142 Mich. 491, 105 N. W. 1122. As we shall point out hereinafter, the Michigan cases are based upon a statute much broader than ours.

We shall now, as briefly as possible, review the foregoing cases. The case first cited, which, for convenience, we shall call the Blackstone Case, which was affirmed by the United States Supreme Court in 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, the deceased, a nonresident of the state of New York and a resident of the state of Illinois at the time of his death, had a large sum of money on deposit in a New York City bank under a special arrangement with the bank. The New York officials insisted that the money on deposit in the New York bank was subject to the inheritance or transfer tax imposed by the New York statute, which imposed a transfer tax on all "property within the state" owned by nonresidents at the time of their death. Laws 1896, c. 908, § 220. A similar question had arisen in a prior case in New York; namely, *In re Matter of Houdayer*, 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. Rep. 642, where it was held that the money belonging to a nonresident which was on deposit in a New York bank was property within the state and subject to the tax. The Blackstone Case, therefore, merely followed the Houdayer Case. While it is true that some somewhat sweeping language is used by the court in 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, supra, yet it is also true that all that was before the court was the question whether the money of the nonresident which was on deposit in a New York bank was "property within the state," and hence subject to the tax. It was held, following the New York cases, that it was. While it is true that both the New York courts and the United States Supreme Court recognized the principle that the relation of a depositor and a bank was that of creditor and debtor, yet all the courts hold that, although the depositor is not entitled to demand or to receive the identical money deposited but can only require that the bank pay him in current money, yet it is held that in case of a bank deposit the money is physically within the state, and in order to obtain payment of the same when refused by the bank the depositor must have recourse to the laws and to the courts of the state where the money is deposited, hence it is held that a deposit of money by a nonresident, for the pur-

pose of taxation, creates something more than the mere rela-
tion that exists between a bond holder and the person or cor-
poration issuing the bonds.

In view of what has been said, we are clearly of the opin-
ion that the foregoing cases can have no controlling influ-
ence on the one at bar. In this connection it is, however, im-
portant to remind the reader that in *Re Matter of Whiting,*
supra, the precise question involved here was before the
court; namely, whether bonds owned by nonresidents the
payment of which is secured by a lien on property situate
within the state demanding the tax were subject to such tax.
It was there held that the bonds were not "property within
the state" within the purview of the statute, and hence not
subject to the tax. In the latter case the distinction between
corporate stocks and corporate bonds held by nonresidents is
clearly stated. It is there held the transfer tax may legally
be imposed on the transfer of the stock while it may not be
on the bonds. By the statement just made we do not mean to
say that, where bonds are registered and must be transferred
the same as stock, the holding would be the same.

*In re Joyslin's Estate,* supra, the Supreme Court of Ver-
mont held that "debts due a deceased person from nonresi-
dents of Vermont" are not subject to an inheritance tax
under a statute which imposed such a tax upon "all property
within the jurisdiction of this state, * * * whether tangi-
ble or intangible," due or past due, etc. The foregoing case
goes further in denying the right to impose an inheritance
tax than most cases go, and we have cited it only for the in-
formation of the reader.

In *Bliss* v. *Bliss,* supra, the question for decision is stated
by the Chief Justice thus:

"The first question presented is whether certain promissory
notes executed by a copartnership known as Bliss, Fabyan and
Company to the order of Cornelius N. Bliss and owned and kept
by him in New York, the state of his domicile, are subject to a
succession tax in this commonwealth, he having deceased, testate,
a resident of New York, in October, 1911."

The Massachusetts statute is in effect like ours, and it was
held that the notes were not "within the jurisdiction of the

state'' at the death of the deceased, and hence were not subject to the tax.

The same court, in *Kinney* v. *Treasurer and Receiver General,* supra, however, held that a mortgage held by a nonresident at the time of his death in which lands situate within the state of Massachusetts were conveyed to secure the payment of a debt due from a resident to a nonresident was subject to the tax. The ruling is, however, based upon the fact that by virtue of the laws of Massachusetts the fee to the lands passed to the mortgagee, and hence the latter held the legal title to the lands at the time of his death precisely as though it had been conveyed to him by proper deed of conveyance; in other words, he was assumed to be the owner of the land within the purview of the statute. It requires no argument to demonstrate that we are not now confronted with such a situation.

*Gilbertson* v. *Oliver,* supra, is a case decided by the Supreme Court of Iowa. Our statute is practically a duplicate of the Iowa statute upon which the foregoing decision is based. In that case it appears that a resident of Iowa was indebted to a nonresident at the time of the latter's death and that the debt was evidenced by notes which were secured by a mortgage on lands situate within the state of Iowa. It was held that the notes and the mortgage, which were in the possession of the deceased in a foreign state at the time of his death were not ''within the jurisdiction of the state of Iowa,'' and hence not subject to the inheritance tax.

In *Walker* v. *People,* supra, by a divided court (five to two) it was held under a statute like ours that bonds issued and owned under substantially the same conditions as the bonds in the case at bar were not within the jurisdiction of the state of Colorado and not subject to the inheritance tax imposed by the Colorado statute. It may be said in passing that the opinions of the two dissenting justices shed no light upon the controversy.

In *State* v. *Chadwick,* supra, the Supreme Court of Minnesota, under a statute like ours, and under conditions like those in the case at bar, holds that bonds owned by nonresidents and in their possession at the time of death in a foreign

state are not within the jurisdiction of the state of Minne-, sota and are not subject to the transfer tax imposed by the Minnesota statute.

The case of *Fuller* v. *South Carolina Tax Comm.*, supra, is perhaps the nearest case in point. Indeed, the facts and conditions in that case, in legal effect, are parallel to those in the case at bar. That case is likewise the most recent one in which the question here involved was considered under a statute like ours. In the opinion, in which the authorities are carefully if not exhaustively reviewed, it is held that bonds issued under conditions like those in the case at bar which are owned and held by nonresidents at the time of their death were not within the jurisdiction of the state of South Carolina and hence not taxable under the inheritance statute.

We now come to the two Michigan cases upon which appellants specially rely. In the case of *In re Stanton's Estate,* the first Michigan case, it was held that a mortgage on land situate within the state of Michigan, which mortgage was owned by a nonresident, but was in the possession of an agent of the nonresident owner residing in the state of Michigan, at the death of the owner was subject to the inheritance tax under the Michigan statute. In the next case, *In re Merriam's Estate,* it was held that although the mortgage was not within the state of Michigan, but was in the possession of the nonresident owner at the time of his death, it, nevertheless, was subject to the inheritance tax. The later Michigan case, it seems, is based upon the decision in *Blackstone* v. *Miller,* supra. In both of the Michigan cases, however, the subject is very hastily considered and passed over. Moreover, those cases are based upon a statute which provided that—

A tax "shall include all property or interest therein whether situated within or without this state and including all property represented or evidenced by note, certificate, stock, land, contract, mortgage or other kind or character of evidence thereof, and regardless of where any such evidence or property is owned, kept or possessed within or without this state." 1 Howell's Michigan Statutes, Ann. (2d Ed.) § 2042.

Upon the contrary, our statute, like those that were considered in the cases we have cited from the several jurisdictions, limits the tax to property within the jurisdiction of the state or to property within the state at the time of the death of the nonresident owner. The Michigan cases, therefore, are based upon a statute much broader than ours and broader than statutes of those states from which we have cited the foregoing cases.

Nor are we able to construe the case of *Blackstone* v. *Miller,* supra, as it is construed by the Supreme Court of Michigan. As hereinbefore pointed out, the only question involved and decided in that case was whether the deposit in the New York bank owned by a citizen and a resident of the state of Illinois was subject to the tax. It was held that the money on deposit, for the purpose of taxation, was physically within the state of New York, and hence subject to the transfer tax.

In the case at bar the bonds at no time were actually or physically within this state, nor within the jurisdiction of this state, and hence the decision in the Blackstone Case cannot control the decision in this one.

All the decisions that we have found after a somewhat diligent search, which are based on statutes like ours, are to the effect that bonds or mortgages, or evidences of debt, which are in the possession of nonresidents of the state wherein the tax is sought to be imposed at the time of their death, which occurs in a foreign state, are not within the jurisdiction of the state attempting to collect the tax and hence not subject to the tax.

Appellants concede that all of the decisions emanating from the federal courts are to the effect that bonds held by nonresidents would not be subject to general taxation within the state. They insist, however, that inheritance or transfer taxes are not necessarily so limited. Upon the other hand, respondents insist that, although it were conceded that appellants' contention respecting inheritance taxes were correct, yet, in view that our statute merely imposes the inheritance tax upon property within the jurisdiction of the state, the bonds in question are not within the terms of the statute.

They further insist that it is a cardinal rule of construction that statutes imposing taxes should not be extended by construction beyond their express provisions.

As before pointed out, our statute, by its terms, limits the right to impose inheritance taxes to property within the jurisdiction of the state. That being so, would it not result in extending the statute beyond its terms if the bonds in question were held subject to the tax? So far as general taxation is concerned, it has always been the policy of the people of this state to exempt mortgages from taxation, whether held by residents or by nonresidents. Our Constitution (article 13, § 3) provides that—

"Mortgages upon real and personal property shall be exempt from taxation."

The policy is both sound and practical, in view of the existing conditions of the people of this state. The resources of this state are merely in process of development. The money required for their development must be obtained from outside of the state; that is, it must be borrowed from those who lend money. The property owned within the state must be mortgaged or pledged to secure the payment of the borrowed capital. If a tax is imposed upon such mortgages and securities, the borrowers who are the people of this state, must themselves pay the tax which will be represented in increased interest rates. In the case of inheritance taxes the rate of interest would thus be increased upon all of the mortgages, although only a very small per cent. might ultimately be required to pay such a tax. The people would thus be required to pay in the form of interest a much larger amount than they would receive in return from such taxes. Why then attempt, by construction, to impose the burden of inheritance taxes which in the long run must be borne by the people?

This brings us to the last proposition argued by respondents, which is that the tax in question, if imposed on foreign-held bonds, would be violative of certain provisions of the federal Constitution. In view of the conclusion reached, however, that question is merely academic, and hence we shall not consider it.

In addition to the cases hereinbefore referred to, counsel cite the following: *Magoun* v. *Illinois Tr. & S. Bank,* 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; *State Tax Cases on Foreign Held Bonds,* 15 Wall. 300, 21 L. Ed. 179; *Giozza* v. *Tiernan,* 148 U. S. 657, 13 S. Ct. 721, 37 L. Ed. 599. The decisions in the cases last cited, while incidentally referring to transfer taxes, are, however, principally devoted to a discussion of the principles governing general property taxes. The foregoing decisions are, however, as illuminating as they are important upon the question of taxes. They must, however, be read in order to be fully understood and appreciated. It must suffice to say that in all of them the rights of the several states to impose taxation is limited to property which is within their respective jurisdictions. While there are some exceptions relating to transfer or inheritance taxes, such exceptions, in view of our statute, have no application to this case.

In view of what has been said, it follows that the judgment of the district court is right, and it is therefore affirmed, with costs.

GIDEON, C. J., and THURMAN, CHERRY, and STRAUP, JJ., concur.