# Wytheville.

## COMMONWEALTH OF VIRGINIA AND C. LEE MOORE, AUDITOR, ETC. v. ARCHER M. HUNTINGTON AND HENRY E. HUNTINGTON, EXECUTORS, ETC.

June 16, 1927.

1. INHERITANCE TAXES—*Taxes upon Transfer of Personal Property—Time of Filing Application for Relief—Appeal and Error—Point Raised for the First Time on Appeal—Case at Bar.*—The instant case was an application for relief against the assessment of a transfer tax upon the estate of a nonresident decedent. It was averred that it appeared from the record that the application for relief by the executors was not filed within one year from the date of the assessment, the time prescribed by law. The record was silent on this point and as no such defect appeared from the record, the objection could not be entertained on appeal as it was not made in the trial court.

2. INHERITANCE TAXES—*Taxes upon Transfer of Personal Property—Time of Filing Application for Relief—Appeal and Error—Point Raised for the First Time on Appeal—Case at Bar.*—In the instant case, an application for relief against a transfer tax assessed on the estate of a nonresident decedent, it was objected that the application for relief was not filed within one year from the date of assessment, the time prescribed by law. It did not appear that this objection was made in the trial court and from the brief of counsel for the executors of the decedent, it appeared that if the objection had been made in the trial court it could have been shown without question that the application was made within one year from the date of the assessment. There was no denial of the fact in the reply brief for the Commonwealth.

   *Held:* That while this could not supplement the record, the fact would be, under the circumstances of the case, accepted on appeal as an admission, which is inferred because the question was not raised in the trial court and the case was there contested upon its merits.

3. INHERITANCE TAXES—*Taxes upon Transfer of Personal Property—Time of Filing Application for Relief—Appeal and Error.*—On appeal from a judgment in favor of the applicants for relief against a transfer tax assessed upon the estate of a nonresident, it was argued

that the application for relief by the executors was not filed within one year from the date of the assessment. This fact, however, did not appear from the record.

*Held:* That if the alleged defect had actually appeared from the record the objection could have been made for the first time on appeal, as jurisdictional.

4. INHERITANCE TAXES—*Taxes upon Transfer of Property—Refund of Tax—"Procedure."*—On an application for relief by executors from a transfer tax assessed on the estate of a nonresident, it was objected that no authority was vested in the trial court to direct a refund of the taxes which had already been paid into the treasury. Section 44½ of the Tax Bill, Acts of 1922, page 795, declares that the "procedure" upon an application for relief from such a tax to the Circuit Court of the city of Richmond, shall be the same as prescribed by section 44 of that act. In subsection 14 of section 44, express authority is given to the court to require the Auditor of Public Accounts to refund to the aggrieved taxpayer the amount of the tax adjudged to be illegal.

*Held:* That the word "procedure" in section 44½ of the Tax Bill should be construed to authorize such refund.

5. WORDS AND PHRASES—*Procedure—Practice.*—The term "procedure" is so broad in its signification that it is seldom employed in our books as a term of art. It includes in its meaning whatever is embraced by the three technical terms, Pleading, Evidence, and Practice. And the word "practice" in this sense means those legal rules which direct the course of proceeding to bring parties into the court and the course of the court after they are brought in. The word "procedure" includes everything that pertains to the remedy.

6. INHERITANCE TAXES—*Taxes upon Transfer of Personal Property—Procedure—Relief Afforded.*—There seems to be no good reason for doubting that, when the General Assembly provided that the "procedure" for the correction of taxes erroneously assessed under section 44½ of the Tax Bill, Acts of 1922, page 795, providing for a tax, on the transfer at death of the personal property of a nonresident, should be identical "as near as may be" with that provided in section 44, it included not only the method of bringing the parties to the litigation before the trial court, but also the relief which was to be there afforded.

7. INHERITANCE TAXES—*Transfer Tax on the Property of Nonresident—Procedure and Remedy the Same as under Section 44 of the Tax Bill, Acts of 1922, Page 795—Refund.*—The General Assembly has not only failed to distinguish between the remedy in the trial court for the correction of erroneous assessments of inheritance taxes under section 44 and that for the correction of such assessments of transfer taxes upon the estates of nonresident decedents under section 44½,

but has clearly undertaken to provide the same remedy and relief there, as far as practicable and appropriate. The same procedure for correction is provided for the nonresident taxpayer in the trial court as that prescribed by section 44 of the Tax Bill and he is afforded the same remedy and relief. It follows that the Circuit Court of Richmond has jurisdiction to require the Auditor to refund any transfer tax erroneously assessed and exacted under section 44½.

8. INHERITANCE TAXES—*Transfer Tax on the Personal Property of Non-residents—Sections 44 and 44½ of the Tax Bill, Acts of 1922, Page 795—Order Stating Facts Proved—Case at Bar.*—Subsection 13 of section 44 of the Tax Bill, Acts of 1922, page 795, provides that the attorney for the Commonwealth or such other attorney as the Auditor may designate, shall defend the application for relief against the assessment, and "no order made in favor of the applicant shall have any validity unless it is stated therein that such attorney did defend; and the facts proved upon such hearing shall be certified." It was contended that the order, in the instant case, did not state the facts proved. The contention being that to be valid, it was necessary that the facts proved appear in the order.

*Held:* That the statute would not bear such construction if not punctuated, and the use of the semicolon before the last clause clearly determined the question.

9. INHERITANCE TAXES—*Transfer Tax on the Personal Property of Non-residents—Sections 44 and 44½ of the Tax Bill, Acts of 1922, Page 795—Application for Relief—Facts Proved to be Certified—Case at Bar.*—Subsection 13 of section 44 of the Tax Bill, Acts of 1922, page 795, relating to relief against erroneous assessments, provides that no order made in favor of applicant should be valid unless the facts proved upon the hearing should be certified. In the instant case, that the court intended to follow the statute and to certify the facts proved is apparent from the order itself, for it shows every fact otherwise required by the statute and contains this statement—that the case was heard "upon the agreed statement of facts heretofore filed by order entered May 17, 1926, which facts, so agreed, are now certified by the court and made a part of the record."

*Held:* That the order in the instant case sufficiently complies with the statute.

10. INHERITANCE TAXES—*Transfer Tax on the Personal Property of Non-residents—Sections 44 and 44½ of the Tax Bill, Acts of 1922, Page 795—Rehearing—Case at Bar.*—In the instant case, an application to the Circuit Court of Richmond for relief against taxes assessed against estate of a nonresident, under section 44½ of the Tax Bill, Acts of 1922, page 795, it was assigned as error that the court erred in not entertaining a petition for rehearing which was filed by the Auditor of Public Accounts. Under subsection 9 of section 44½,

the Auditor may appeal directly to the Supreme Court of Appeals and this is the only appeal allowed him or the Commonwealth as to the transfer taxes upon the estates of nonresidents. This being true, it was no error for the trial court to refuse to permit a petition for rehearing to be filed under subsection 16 of section 44 of the Tax Bill.

11. INHERITANCE TAXES—*Transfer Tax on the Personal Property of Non-residents—Sections 44 and 44½ of the Tax Bill, Acts of 1922, Page 795—Payment Voluntary and Involuntary.*—In an application for relief against taxes paid under section 44½ of the Tax Bill upon the estate of a nonresident, it was unnecessary to consider whether the payment of the tax complained of was voluntary or involuntary, because there was express statutory authority for all of the proceedings in the instant case and this being true, it is immaterial whether the payment was voluntary or involuntary.

12. TAXATION—*Statutes—Extra-Territorial Effect.*—It is fundamental that statutes imposing taxes have no entra-territorial effect.

13. INHERITANCE TAXES—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Transfer Tax on Personal Property—Extra-Territorial Effect.*—Section 44½ of the Tax Bill, Acts of 1922, page 795, relating to transfer taxes against the estates of nonresidents, applies within the boundaries of the Commonwealth of Virginia, and can be enforced only *in rem* or *in personam* upon those subjects of taxation upon which the laws can operate or, expressed differently, which are within the jurisdiction of the State. These limitations were clearly recognized and heeded by the General Assembly when this act imposing transfer taxes against the estates of nonresidents was adopted.

14. INHERITANCE TAXES—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Transfer Tax on Personal Property—Extra-Territorial Effect.*—Under section 44½ of the Tax Bill there can be no transfer tax lawfully imposed unless the property involved is within the jurisdiction of the State, and there can be no such tax unless such property is transferred, paid or delivered, if and when within or subject to the laws of the State.

15. INHERITANCE TAXES—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Transfer Tax on Personal Property—Extra-Territorial Effect.*—Subsection 3 of section 44½ of the Tax Bill, Acts of 1922, page 795, when read together with the first sub-section of 44½ of the Tax Bill can only refer to property within the State which is transferred, paid or delivered while so subject to the laws of the State, because the subject which is the same in both sections is so clearly indicated in subsection (3) by the use of the words "such property." The State has not undertaken to impose a tax upon any other property than that referred to in subsection (1), i. e., property transferred within its jurisdiction.

16. INHERITANCE TAXES—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Transfer Tax on Personal Property—Extra-Territorial Effect—Unregistered Coupon Bonds of Virginia Corporations—Case at Bar.*—The instant case was an application by executors for relief from taxes paid upon unregistered coupon bonds of Virginia corporations belonging to their decedent, a nonresident, secured by deed of trust. The trustees were nonresident corporations.    The bonds passed by mere delivery and no act of registry or any other act was required, either in Virginia or elsewhere, to vest title and ownership in the trustees.    No notice of the transfer was required either to the obligors or the trustees.    The bonds were payable in the city of New York; and at the time of the decedent's death had been lodged for safe keeping in decedent's safe deposit box in New York.    None of the beneficiaries of the decedent's will were domiciled in Virginia except the beneficiary of a charitable legacy.    The applicants duly qualified as executors in California.    It was not necessary to invoke any law of Virginia to vest any individual with legal title to the bonds.

   *Held:*    That the bonds were not subject to taxation, under section 44½ of the Tax Bill, Acts of 1922, page 795; and that an order to the Auditor of Public Accounts to refund the taxes was not erroneous.

17. STATUTES—*Construction—Adoption of Statute of Another State—Section 44½ of the Tax Bill Relating to Taxes on Transfer of Personal Property of Nonresidents.*—The Virginia Transfer Act (section 44½ of the Tax Bill, Acts of 1922, page 795) was adopted here after the New Hampshire statute on the same subject had been construed by the administrative authorities in New Hampshire not to apply to the unregistered bonds either of domestic or foreign corporations, if not physically located within the State.

   *Held:*    That when the General Assembly of Virginia adopted this statute in substantially similiar language, the presumption arose that it knew of the construction already placed upon it in New Hampshire and intended it to receive a similar construction.

18. INHERITANCE TAXES—*Section 44½ of the Tax Bill Imposing Tax upon the Transfer at Death of the Personal Property of Nonresidents—Constitutionality of Act.*—As it is manifest that the State of Virginia has not undertaken to impose a tax upon coupon bonds of domestic corporations upon their transfer at the death of their nonresident owner, by section 44½ of the Tax Bill, it was not necessary, in the instant case, to discuss the constitutional question of whether the State had power to impose such a tax.

19. INHERITANCE TAXES—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Tax upon the Transfer at Death of the Personal Property of Non-residents—Shares of Stock.*—The transfer of shares of stock in Virginia corporations owned by nonresident decedents is subject to the transfer tax because all such transfers are within the jurisdiction of the State.

20. Inheritance Taxes—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Tax upon the Transfer at Death of the Personal Property of Nonresidents—Within the Jurisdiction of the State.*—In order to be subject to the tax, as within the jurisdiction of the State, there must be some act of transfer, payment, or delivery to be done or performed under the authority of the Virginia law. Such acts legally consummated outside of Virginia and independent of its laws are not within its jurisdiction.

21. Inheritance Taxes—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Tax upon the Transfer at Death of the Personal Property of Nonresidents—Privilege Tax.*—The tax imposed upon the transfer at death of the personal property of nonresidents imposed by section 44½ of the Tax Bill, Acts of 1922, page 795, being a transfer tax is in its nature a privilege tax as distinguished from a tax upon property. Such a tax can be fairly justified in consideration of some privilege accorded by the State, and if there is no such privilege accorded, the State can impose no tax. If there is a complete devolution of title consummated by law, outside of the territorial jurisdiction of Virginia, without the necessity either of invoking any of its laws, or the judicial, or official machinery of the State, or the performance of any act by some person in Virginia, there is no basis for such a tax.

22. Inheritance Taxes—*Section 44½ of the Tax Bill, Acts of 1922, Page 795—Tax upon the Transfer at Death of the Personal Property of Nonresidents—Test of Validity of Statute.*—The power to enforce by proceeding, either by subjecting the property or by personal judgment, is the test of the validity of such statutes, as the tax upon the transfer at death of the personal property of nonresidents imposed by section 44½ of the Tax Bill, Acts of 1922, page 795.

23. Inheritance Taxes—*Transfer Tax—Subject within the Jurisdiction of the State.*—The principle that the subject to be taxed must be within the jurisdiction of the State applies as well in the case of a transfer tax as in that of a property tax. A State has no power to tax the devolution of property of a nonresident unless it has jurisdiction of the property devolved or transferred.

Error to a judgment of the Circuit Court of the city of Richmond in a proceeding to recover taxes erroneously assessed. Judgment for the applicants. Commonwealth assigns error.

*Affirmed.*

The opinion states the case.

*E. Warren Wall*, for the Commonwealth.

*Christian & Lamb*, for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

The Auditor of Public Accounts, acting under section 44½ of the Tax Bill (Acts 1922, page 792, chapter 460), assessed a transfer tax of $102,784.80 against the estate of Arabella D. Huntington, deceased, who was a resident of California.

The executors admitted liability for $16,171.41, but claimed a reduction of $86,613.39 as having been erroneously assessed and collected. This disputed portion of the tax was two per cent of the total value of certain unregistered coupon bonds and past due interest coupons therewith, owned by the nonresident decedent at the time of her death, then located in New York, and due by certain Virginia corporations.

The trial court granted the prayer of the petition, reduced the tax and directed the Auditor of Public Accounts to refund the amount claimed to the executors or their attorneys. It is from this order to which a writ of error, construed to be the statutory appeal, was allowed, and is being prosecuted here.

The questions presented require the construction of the Virginia statute, section 44½ of the Tax Bill, subsections (1), (2), (3) and (9), which are printed in the margin.*

---

*"*Section 44½. Tax upon the transfer at death of the personal property of nonresidents.*—(1) All personal property within the jurisdiction of the State and any interest therein, belonging to persons whose domicile is without the State shall, upon the death of the owner, be subject to a tax of two per centum of its actual value for the support of the State government, upon its transfer, payment or delivery to the executor, administrator or trustee of the estate of said deceased.

I. Certain errors or defects in procedure are assigned for the appellants.

[1, 2] (a). It is averred that it appears from the record that the application for relief by the executors was not filed within one year from the date of the assessment, the time prescribed by law. The sufficient answer to this objection is that the defect alleged does not so appear. The record is silent on this point. As no such defect appears, the objection cannot be entertained, because it was not made in the trial court.

"(2) No stock or obligation of any national bank located in this State or of any corporation organized under the laws of this State, deposit in any bank, trust company, or other similar institution located in this State or organized under its laws, obligation of any citizen of this State, or securities or personal property of any description within the jurisdiction of the State, or any interest therein, belonging to the estate of a nonresident shall be transferred, paid or delivered to any person except an executor, administrator or trustee of the estate of said deceased duly appointed either in this State or in the State of the decedent's domicile by a court having jurisdiction for that purpose.

"(3) Such property shall not be transferred, paid or delivered to a foreign executor, administrator or trustee until the tax has been paid. Any person or corporation which shall transfer, pay, or deliver or having control therefor shall permit the transfer, payment or delivery of any such property to any person other than a resident executor, administrator or trustee before such tax has been paid shall be liable for the tax and an additional penalty of not more than one thousand dollars in an action brought by the Auditor of Public Accounts. Any such bank or corporation which shall record such a transfer of any share of its stock or of its obligation or issue a new certificate of stock or other instrument to evidence such a transfer before all taxes imposed upon the transfer by this act have been paid shall be subject to the same liability and penalty."

"(9) The Auditor of Public Accounts shall determine the amount of all taxes due and payable under the provisions of this act and shall certify the amount due and payable to the resident executor, administrator or trustee, if any, otherwise to the person or persons by whom the tax is payable. Said tax shall be assessed upon the actual value of the property transferred at the time of the decedent's death. Such tax shall be determined by the Auditor of Public Accounts who shall certify the same to the person or persons by whom the tax is payable and such determination shall be final unless the tax shall be reduced or increased upon application by the person assessed therewith, within one year from the date of such assessment, to the Circuit Court of the city of Richmond. Upon such application the procedure shall be as near as may be the same procedure prescribed by section forty-four of this act for the correction of erroneous assessments of inheritance taxes, with the same right of appeal to the Supreme Court of Appeals of Virginia, either to the applicant or the Auditor of Public Accounts as provided by law for appeals in other cases, except cases in which there is appeal as a matter of right."

The reason, indeed the necessity, for requiring such objections to be made in the trial court are manifest in this case, because it appears that if this objection had been so made, it could have been then and there shown, without question, that this assessment was made August 13, 1925, while the application was filed November 24, 1925—that is, clearly within the year prescribed by the statute. This we state, because the counsel for the appellees have filed with their brief a copy of the official assessment, and there is no denial of the fact, so shown, in the reply brief for the Commonwealth. While this cannot supplement the record, the fact is, under the circumstances of this case, accepted here as an admission which is inferred because the question was not raised in the trial court, and the case was there contested and decided upon its merits.

[3] If this alleged defect, however, had actually appeared from the record, the objection could have been made here for the first time as jurisdictional. *Leesburg v. Loudoun National Bank*, 141 Va. 244, 126 S. E. 196.

[4] (b) It is objected that no authority was vested in the trial court to direct a refund of the taxes which had already been paid into the treasury. This depends, of course, upon the statute, the pertinent language of which, found in subsection 9 of section 44½ of the Tax Bill (Acts 1922, page 795), reads: "Such tax shall be determined by the Auditor of Public Accounts, who shall certify the same to the person or persons by whom the tax is payable, and such determination shall be final, unless the tax shall be reduced or increased by application of the person assessed therewith, within one year from the date of assessment, to the Circuit Court of the city of Richmond. Upon such application, the procedure shall be as near as may be the same procedure prescribed by section 44 of this act for the cor-

rection of erroneous assessments of inheritance taxes, with the same right of appeal to the Supreme Court of Appeals of Virginia, either to the applicant or the Auditor of Public Accounts, as provided by law for appeals in other cases, except cases in which there is appeal as a matter of right."

Observe incidentally that this clause itself provides unequivocally for an "appeal" to this court under the general law, so that the reference to "procedure" under section 44 of the Tax Bill relates to procedure in the trial court. Turning to the record, then, we find that the application, hearing and judgment in the circuit court in this case seem to have been strictly in accordance with that section (44), the last amendment of which is in Acts, 1924, page 461, chapter 305. We find in subsection 14, of section 44, that express authority is given to the court to require the Auditor of Public Accounts to refund to the aggrieved taxpayer the amount of the tax adjudged to be illegal, so that the question raised by this assignment is whether the word "procedure" in that portion of subsection 9 of section 44½, which has been quoted, should be construed to authorize such refund. A few citations may be helpful in construing the word "procedure" as there used.

[5] In *Kring* v. *Missouri*, 107 U. S. 231, 2 S. Ct. 452, 27 L. Ed. 510, we find this: "The word 'procedure' as a law term is not well understood, and is not found at all in Bouvier's Law Dictionary, the best work of the kind in this country. Fortunately, a distinguished writer on criminal law in America has adopted it as a title to a work of two volumes, *Bishop on Criminal Procedure.* In his first chapter he undertakes to define what is meant by *procedure.* He says, 'S. 2.—The term "procedure" is so broad in its signification that it is seldom employed in our books as a term of art..

It includes in its meaning whatever is embraced by the three technical terms, Pleading, Evidence and Practice.' And in defining Practice in this sense he says: 'The word means those legal rules which direct the course of proceeding to bring parties into the court and the course of the court after they are brought in.' "

In Minor's Conflict of Laws, section 206, page 509, this appears: "The *lex fori* governs all matters relating to the procedure in the trial of causes, including the proper parties plaintiff and defendant, the process, pleadings and rules of practice, the court wherein the cause is to be tried, the admissibility and effect of evidence, the incidents of the trial and the appellate procedure—indeed, everything that pertains to the remedy."

[6] There seems to be no good reason for doubting that when the General Assembly provided that the procedure for the correction of taxes erroneously assessed under this section 44½ should be identical "as near as may be" with that provided in section 44, it included not only the method of bringing the parties to the litigation before the trial court, but also the relief which was to be there afforded. To limit the section so clearly designed to afford an adequate remedy by construing it to afford no relief, and to leave the aggrieved taxpayer, after having established his injury and right to recover, without any recovery would be such a strained and novel interpretation that it cannot be adopted.

[7] The General Assembly has not only failed to distinguish between the remedy in the trial court for the correction of erroneous assessments of inheritance taxes under section 44 and that for the correction of such assessments of transfer taxes upon the estates

of nonresident decedents under section 44½, but has clearly undertaken to provide the same remedy and relief there, as far as practicable and appropriate. What possible justification then can there be to distinguish or differentiate between the two by a meticulous construction of the word *procedure?* Indeed, it seems to us the construction which we have indicated is obvious. We perceive nothing in the statute to sustain the contrary view, and, therefore, conclude that the same procedure for correction is provided for the nonresident taxpayer in the trial court, and hold that the statute clearly affords him the same remedy and relief. It follows from this that, in our view, the circuit court was empowered to give the full relief, and had jurisdiction, under subsection 9, to require the Auditor to refund any transfer tax erroneously assessed and exacted under section 44½.

[8, 9] (c) It is claimed that even if the court had this plenary jurisdiction, the order is void, because it does not comply with the statutory requirements. Waiving the fact that the assignment is so vague that we might, under the rule, ignore it, we find that it refers to subsection 13, of section 44, and to this provision: "The attorney for the Commonwealth, or such other attorney as the Auditor may designate, shall defend the application, and no order made in favor of the applicant shall have any validity unless it is stated therein that such attorney did defend; and the facts proved upon such hearing shall be certified."

We observe from the reply brief that the error claimed is that the order does not state the facts proved, the contention being that to be valid it is necessary that the facts proved appear in the order. We cannot agree that the statute should be so con-

strued. It would bear no such construction if not punctuated, and the use of the semicolon before the last clause clearly determines the question. The facts proved in this case are certified. Unless they were, the appellants would have no standing in this court upon the merits, for there is no bill of exceptions or other certificate of facts. That the court intended to follow the statute and to certify the facts proved is apparent from the order itself, for it shows every fact otherwise required by the statute and contains this statement—that the case was heard "upon the agreed statement of facts heretofore filed by order entered May 17, 1926, which facts, so agreed, are now certified by the court and made a part of the record."

The language heretofore quoted from the statute, subsection 13, section 44, constitutes the sole basis for this contention. We construe that portion of the order which we have just quoted as a sufficient compliance with the statute and hold that the facts upon which the parties agreed have been certified by the court, and that there has been substantial compliance with the statute.

[10] (d) Another of the errors assigned is that the court should have entertained a petition for rehearing, which was filed by the Auditor of Public Accounts. This assignment is based upon section 44 relating to inheritance taxes, to which we are referred by section 44½ for procedure. The only provisions of section 44 to which our attention need be directed are subsections 13, 14, 15 and 16.

Subsection 13 provides for the application in writing by the aggrieved taxpayer within one year, written notice to the attorney for the Commonwealth and a copy of the notice and application sent to the Auditor of Public Accounts by registered mail; subsection 14

provides for complete relief, if the court be satisfied that the applicant has been erroneously charged with taxes, and authorizes the court to exonerate the taxpayer from the payment of so much thereof as has been erroneously assessed, if not already paid, and, if already paid, that the amount be refunded to him and that a copy of any order made shall be certified by the court to the Auditor. Then follows subsection 15, which provides for a right of appeal by the applicant, but this does not authorize any appeal by the Commonwealth, or the Auditor for the Commonwealth. Then comes subsection 16, which is the section here relied upon under this assignment. That subsection reads: "If, from the statement of the facts or other evidence, the Auditor of Public Accounts shall be of opinion that the order of the court is erroneous, he may, within one year from the time such order is made, file a petition for rehearing or review of such order; said petition may be filed in the court by which the order was entered, or of which the clerk is an officer, or with the clerk or judge thereof in vacation, and shall be in the name of the Commonwealth, and on the filing of same shall operate as a supersedeas and the matter shall thereupon be reheard, or the order reviewed in said court and witnesses examined in the same manner as if no previous determination had been had. The petition shall be presented and the hearing conducted by the attorney for the Commonwealth of the county or corporation, or such other attorney as the Auditor may designate. At the rehearing the court shall make such order therein as may be proper, and should the order of the court be against the Commonwealth, the Auditor of Public Accounts may take an appeal to the Supreme Court of Appeals, and a supersedeas may be granted in such cases in the same manner

as now provided by law in cases of appeal of right. No costs shall be adjudged against the Commonwealth on appeal."

The subsection 16 just quoted, Acts 1924, page 466, as has been stated, is in section 44 relating to inheritance taxes. This provision appears to afford the only method by which the Auditor, representing the Commonwealth, may appeal against an adverse judgment relieving a taxpayer from inheritance taxes. He is required as a condition precedent to an appeal to file a petition for rehearing, and only after the questions thereby raised have been adjudicated may he appeal from the order of the trial court. It is observed that until he intervenes by petition under this section 44 he is not a party to the proceeding. Certainly it is true that he is not given the right of appeal under that section until he has first filed such a petition, while by subsection 15 the applicant is expressly given the right of appeal.

Reverting, then, to section 44½, relating to transfer taxes upon the personal estate of nonresidents, with which we are directly concerned in this case, it appears that this section contains no reference to any petition for rehearing to be filed by the Auditor of Public Accounts. The reason for this doubtless is that it is unnecessary because the Auditor is a party to the proceeding under section 44½. This leads us to the reference in subsection 9 of section 44½ which is made to section 44 for "procedure." What procedure is referred to, is the question. Certain it is that it includes the procedure in the trial court for correction of erroneous assessments, which is required to be as near as may be the same procedure as that provided by section 44. How can this be extended to include the appellate procedure arising under section 44½ when this

section, in express terms, provides for an appeal for both the applicant and the Auditor directly to this court? This is the language of subsection 9 of section 44½ (Acts 1922, page 794): "Upon such application the procedure shall be as near as may be the same procedure prescribed by section 44 of this act for the correction of erroneous assessments of inheritance taxes, with the same right of appeal to the Supreme Court of Appeals of Virginia, either to the applicant or to the Auditor of Public Accounts, as provided by law for appeals in other cases, except cases in which there is appeal as a matter of right."

Whatever apparent confusion may be suggested growing out of this language, it certainly follows that because the appeal is so clearly provided for by subsection 9 of section 44½, this is the controlling statute as to appellate procedure under that section. It would be a manifest absurdity, as well as a grave injustice to the taxpayer, to hold that by authority of this subsection 9 of section 44½, the Auditor might either prosecute or defend an appeal in this court to final judgment, and then after an adverse judgment might reopen and prolong the litigation under subsection 16 of section 44, by filing a petition for rehearing, and then again appeal if the decision should again be adverse. Nor can it be maintained under these statutes that he may elect whether he will proceed with his appeal under subsection 9 of section 44½, or with his petition for rehearing under subsection 16 of section 44. He has no such choice. Under subsection 9 of section 44½ he may appeal directly to this court, and this is the only appeal allowed him or the Commonwealth as to transfer taxes upon the estates of nonresidents. His right of appeal is defined and limited by that subsection and the general law. There is no authority for proceeding

under subsection 16 of section 44 by petition for re-hearing. This being true, and we think it is obviously true, the trial court correctly refused to permit the petition for rehearing to be filed in this case.

[11] It is unnecessary to consider whether the payment of the tax complained of was voluntary or involuntary, a question which is much discussed in the briefs, because there is express statutory authority for all of the proceedings here, and this being true, it is immaterial whether the payment was voluntary or involuntary. *Hotel Richmond* v. *Commonwealth*, 118 Va. 607, 88 S. E. 173.

[12, 13] II. Having concluded that there is no defect in the procedure, the case must be decided upon its merits. It is fundamental, of course, that statutes imposing taxes have no extra-territorial effect. This act applies within the boundaries of the Commonwealth of Virginia, and can be enforced only *in rem* or *in personam* upon those subjects of taxation upon which the laws can operate or, expressed differently, which are within the jurisdiction of the State. These limitations were clearly recognized and heeded by the General Assembly when this act imposing transfer taxes against the estates of nonresidents was adopted. The pertinent sections have been quoted (44½ of the Tax Bill). The first subsection reads: "All personal property within the jurisdiction of this State and any interest therein belonging to persons whose domicile is without the State shall, upon the death of the owner, be subject to a tax of 2 per centum of its actual value for the support of the State government, upon its transfer, payment or delivery to the executor, administrator or trustee of the estate of said decedent."

[14, 15] Every other section of the statute is dependent upon, subordinate to, and must be read with

reference to this provision which imposes the tax. Under it there can be no transfer tax lawfully imposed unless the property involved is within the jurisdiction of the State, and there can be no such tax unless such property is transferred, paid or delivered, if and when within or subject to the laws of the State. Thus read, subsection (3) can only refer to property within the State which is transferred, paid or delivered while so subject to the laws of the State, because the subject which is the same in both sections is so clearly indicated in subsection (3) by the use of the words "such property." The State has not undertaken to impose a tax upon any other property than that referred to in subsection (1), i. e., property transferred within its jurisdiction.

[16] When these obvious considerations are borne in mind, it seems that a mere reference to the facts in this case should conclude the matter. These facts amplified are: Arabella D. Huntington, domiciled and residing in California, died there September 16, 1924. She owned certain shares of stock in Virginia corporations of the value of $808,570.75, and bonds with past due interest coupons thereon of the value of $4,330,669.66. These bonds were obligations of The Newport News Light and Water Company and the Newport News Shipbuilding and Dry Dock Company, both Virginia corporations, and were secured by deeds of trust upon their property, most of which was located in this State. The trustees were nonresident corporations—one Bankers' Trust Company and the other Equitable Trust Company, of New York; the bonds were coupon bonds by their terms passing by mere delivery, and no act of registry or any other act was required, either in Virginia or elsewhere to vest the transferee with complete legal and equitable title and ownership therein,

and no notice of such transfer was required to be given, either to the obligors, to the trustees or any other person. The bonds are payable, both as to principal and interest, in the city and State of New York, and at the time of the decedent's death, and for a long time prior thereto, had been lodged for safe-keeping in the decedent's safe deposit box in the Lincoln Safe Deposit Company, of New York.

The decedent left a will and none of the beneficiaries thereunder are residents of Virginia or domiciled therein, except The Hampton Normal and Industrial Institute, to which she left a charitable legacy.

The defendants in error duly qualified as executors of the will, in California and under its laws. There is no ancillary administration in Virginia. No question was raised by them as to the legality of the transfer tax imposed upon the transfer of the shares of stock in the Virginia corporations, which tax amounted to $16,-171.41, being two per cent upon the value thereof, and this was paid without protest or objection.

It appears from the agreed statement of facts that the Auditor of Public Accounts refused to permit these shares of stock to be transferred until the tax upon the coupon bonds referred to was also paid, and demanded, as a prerequisite to his consent to the transfer of these stocks, that the tax on the coupon bonds be also paid. This tax on the bonds, as has been stated, amounted to $86,613.39.

As to these unregistered bonds, the executors neither needed nor required any transfer, payment, or delivery, or any other act to be done or performed by any official or other person whomsoever in the State of Virginia, or within its jurisdiction.

Here, then, is the estate of a deceased resident of California; here are executors who qualified in Cali-

fornia; here are coupon bonds, transferable by delivery, in the State of New York. For aught we know, they may have been legally transferred frequently since the death of the decedent, and certainly there is no power within the State of Virginia which could have prevented this. There has been neither transfer nor delivery in this State and no payment anywhere. It is not necessary to invoke any law of Virginia to vest any individual with legal title to these bonds, and no part of the tax which the trial court has required to be refunded has been imposed upon the transfer of any property within the territorial jurisdiction or legal control of the State.

We think that this construction is obvious, but in view of the earnestness with which the counsel for the Commonwealth has urged a contrary view, we make a few citations.

[17] The Virginia transfer act was adopted here after the New Hampshire statute on the same subject had been construed by the administrative authorities in New Hampshire. The authority for this statement is the publication, "Inheritance Tax and Transfer Service," Prentice-Hall, Incorporated. The construction of the New Hampshire statute is given in paragraphs 004 and 005, Volume 1, 1924–1925. It is there stated that unregistered bonds either of domestic or foreign corporations are subject to a transfer tax, if physically located within the State, but if not physically located within the State, are not taxable. It is a familiar doctrine that when the General Assembly of Virginia adopted this statute in substantially similar language, the presumption arose that it knew of the construction already placed upon it in New Hampshire and intended it to receive a similar construction.

*In re Bronson*, 150 N. Y. 1, 44 N. E. 707, 34 L. R. A. 238, 55 Am. St. Rep. 632, it is held under a New York

statute imposing a transfer tax upon the devolution of nonresidents' property "within the State," that bonds of a domestic corporation physically located without the State are not taxable in New York under that statute. This is said in the opinion: "Whatever may be argued in support of the right to subject the bonds of domestic corporations to appraisement for taxation purposes under this act, when physically within the State, upon some theory that they are something more than the evidences of a debt and constitute a peculiar and appreciable species of property, within the recognition of the law as well as of the business community, such argument is certainly unavailing in this case, where the bonds themselves were at their owner's foreign domicile. They did not represent 'property within the State' in any conceivable sense. What property they represented consisted in the debt of their maker, and that species of property, unquestionably, must be considered to be, as a chose in action, the holder's and owner's, and to be inseparable from his personalty."

In the *Matter of Fearing*, 200 N. Y. 340, 93 N. E. 956, the court follows the *Bronson Case, supra,* and holds that bonds secured by mortgages on New York real estate, owned by a nonresident of New York, which were physically located in Rhode Island at the time of the devolution, were not subject to the transfer tax, because they were not property within the State, and that the legal title to these bonds was transferred by force of the laws of Rhode Island.

In *Walker* v. *People*, 64 Colo. 143, 171 Pac. 747, 8 A. L. R. 855, note, it is held that the transfer or devolution of the unregistered bonds of a Colorado corporation, secured by real estate partly located in Colorado, owned by a nonresident of that State and

physically located at the owner's residence at the time of his death, was not subject to the Colorado inheritance tax law, which imposed a tax upon the transfer of property of nonresident decedents "within the State."

In *Fuller* v. *South Carolina Tax Commission*, 128 S. C. 14, 121 S. E. 478, the South Carolina statute which provides for a transfer tax, "When the transfer is by will or intestate laws of property within the State, and the decedent was a nonresident of the State at the time of his death," was construed. The property involved was unregistered coupon bonds issued by a South Carolina corporation payable to bearer in New York and were owned by a resident of New York when he died, and were then physically located in New York. Construing that statute, the South Carolina court held that the bonds in question were not within the purview of the statute, since they were not property within the State of South Carolina. The court reasoned that the right to take the bonds by will was in no way conferred by, or dependent upon, the laws of South Carolina; that this right was conferred by the laws of New York, the domicile of the owner, and that the transfer of the legal title was effected wholly and only by the operation of the laws of New York. It was emphasized that there was no ancillary administration in South Carolina and that the foreign personal representatives were able to assert title and make distribution without any aid from the laws of South Carolina. It is remarked, incidentally, that if the bonds had been physically present in South Carolina, the construction would have been different, because then an ancillary administration might have been necessary. in order to acquire the possession upon which complete title depends.

In *McLaughlin* v. *Cluff*, 66 Utah 245; 240 Pac. 161,

42 A. L. R. 347, a statute which imposed a tax upon the transfer of "All property within the jurisdiction of this State, and any interest therein," which is the identical language of the Virginia statute, was construed. The question was whether the transfer tax could be imposed upon the devolution of certain unregistered Union Pacific Railroad Company bonds, owned at the time of his death by Prince Albert of Monaco, physically located at his residence. The court construing that statute held that the tax could not be imposed. Citations and quotations sustaining this view might be multiplied, but these enforce the logical and sound construction of such statutes, and are sufficient.

[18] It is unnecessary to discuss the constitutional question which is raised—that is, as to the power of the State to impose such a tax, because in our opinion it is manifest that the State of Virginia has not undertaken to impose a tax upon coupon bonds such as are here involved. It has only undertaken to impose a tax upon the transfer of property of nonresident decedents when and if it is physically or otherwise so subject to the laws of Virginia that a legal transfer thereof can only be consummated under and by force of its laws. Unless the property is so physically or otherwise subject to the laws of Virginia, there is no process by which the State could require any report or discovery of assets from a foreign fiduciary. So that, even if the construction contended for by the Commonwealth were adopted, the State would be without power to enforce the statute, except as to assets voluntarily disclosed.

[19, 20] This case well illustrates the jurisdiction asserted and the limitations thereof which the State imposes upon its administrative tax officials by this

statute, section 44½. The nonresident decedent owned shares of stock in certain Virginia corporations. No title thereto could be acquired nor any transfer thereof be made except in accordance with the provisions of its Virginia charter, or general laws, including the Virginia uniform stock transfer act (Acts 1924, page 766, chapter 482). Expressed differently, the transfer of shares of stock in Virginia corporations owned by nonresident decedents is subject to the transfer tax because all such transfers are within the jurisdiction of the State. In order to be subject to the tax, as within the jurisdiction of the State, there must be some act of transfer, payment, or delivery, to be done or performed under the authority of the Virginia law. Such acts legally consummated outside of Virginia and independent of its laws are not within its jurisdiction. Devolutions of property so accomplished do not create any liability for the transfer tax under this statute.

[21–23] While we do not think it necessary to review the cases in which the power of the State to impose taxes has been considered, we cite a few. The tax here involved being a transfer tax, is in its nature a privilege tax as distinguished from a tax upon property. Such a tax can be fairly justified only in consideration of some privilege accorded by the State, and if there is no such privilege accorded, the State can impose no tax. If there is a complete devolution of title consummated by law, outside of the territorial jurisdiction of Virginia, without the necessity either of invoking any of its laws, or the judicial, or official machinery of the State, or the performance of any act by some person in Virginia, there is no basis for such a tax. The power to enforce by proceeding, either by subjecting the property or by personal judgment, is the test of the validity of such statutes. We

believe that these principles must be generally accepted. Certainly they are clearly recognized and enforced in three recent cases decided by the Supreme Court of the United States. They are: (1) *Frick* v. *Pennsylvania*, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1059, 42 A. L. R. 316, involving the estate of a deceased resident of Pennsylvania, in which the court, referring to the Pennsylvania transfer act (Pa. St. 1920, sections 20465–20499), says: "The tax which it imposes is not a property tax, but one laid on the transfer of property on the death of the owner. This distinction is stressed by counsel for the State. But, to impose either tax, the State must have jurisdiction over the thing that is taxed; and to impose either without such jurisdiction is mere extortion, and in contravention of due process of law. * * * We think it follows from what we have said that the transfer of the tangible personalty in New York and Massachusetts occurred under and in virtue of the jurisdiction and laws of those states, and not under the jurisdiction and laws of Pennsylvania, and therefore that Pennsylvania was without power to tax it." (2) *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, 46 S. Ct. 256, 70 L. Ed. 475, 43 A. L. R. 1374, where the court, referring to the inheritance tax of North Carolina, said: "The tax here is not upon property, but upon the right of succession to property; but the principle that the subject to be taxed must be within the jurisdiction of the State applies as well in the case of a transfer tax as in that of a property tax. A State has no power to tax the devolution of property of a nonresident unless it has jurisdiction of the property devolved or transferred." (3) *Wachovia Bank & Trust Co., Admr., etc.* v. *Doughton, Comr.*, 47 S. Ct. 202, 71 L. Ed. p. —— (Adv. Ops., December 15, 1926, page

251), in which the court denied the right of North Carolina to tax the transfer of property under the will of a resident of that State, such will operating to pass the title of the property by virtue of a power of appointment resting in the testator, the court saying: "No right exercised by the donee was conferred on her by North Carolina. A State may not subject to taxation things wholly beyond her jurisdiction or control."

There has been some confusion, if not conflict, as to particular items of property owned by nonresidents, some of which have been held within the jurisdiction of the State; but, inasmuch as in this case we think it unnecessary to consider the power of the State, it is also unnecessary to pursue this branch of the subject further.

There are elaborate discussions of many questions in the briefs, and many other cases are cited, but for the reasons already stated we do not think it necessary further to follow these discussions. The questions here decided relate, not to the taxing power, its extent, or its limitations, about which there may still be many doubtful questions, but only to the construction of this particular statute. As we have indicated, our view accords with that of the trial court whose order is plainly right.

*Affirmed.*